TRINITY UNIVERSAL INSURANCE COMPANY, et al., Appellants,

v.

Ronnie Dale BLEEKER, Appellee.

No. 13–95–075–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 27, 1997.

Rehearing Overruled May 22, 1997.

Barry A. Chasnoff, Winston H. Hankins, Polly Jessica Ester, Akin, Gump, Strauss, Hauer & Feld, San Antonio, amicus curiae.

J. Preston Wrotenbery, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, Houston, H. Harman Camp, Selman & Camp, McAllen, R.E. Lopez, Jr., Christiana Dijkman, Brownsville, Roger Townsend, Jennifer Bruch Hogan, Holman, Hogan, Dubose & Townsend, Kevin Dubose, William J. Boyce, Fulbright & Jaworski, Houston, for appellants.

Anthony F. Constant, Corpus Christi, Phil Harris, Weslaco, Frank G. Davila, Corpus Christi, for appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

CHAVEZ, Justice.

This case evolves out of an insurance company's conduct when confronted with settlement offers arising from an automobile collision. The jury found that Trinity Universal Insurance Company, et al., (hereafter "Trinity" or "appellants") had breached their *Stowers*[1] duty to settle on behalf of their insured, Ronnie Dale Bleeker, violated the DTPA, and breached a common law duty of good faith and fair dealing. Actual damages were assessed against appellants for $12,836,-976.75, and trebled pursuant to the DTPA to a figure of $38,510,930.25. Attorney's fees, intended to represent 50% of the judgment, were added in the amount of $38,510,930.25, for a total judgment of $77,021,860.50.

We will note the issues on appeal in the order in which we address them. First, appellants contend that they did not breach any duty created by the receipt of a valid settlement offer because they never received a valid settlement offer. Next, appellants complain of error regarding the allegedly im-proper admission into evidence of an exhibit consisting of a letter from Bleeker's criminal lawyer, Michael MaGuire, to Craig Vittitoe, Bleeker's lawyer from the underlying liability case. Appellants also argue that all recovery in this case must be denied because Bleeker has always maintained his satisfaction with Trinity, so a case against his insurer can not be brought in his name against his wishes. On the issue of a possible DTPA violation for failure to inform the insured of settlement offers, appellee contends that appellants have waived their right to complain about the submission of this issue by failing to make a timely objection at trial. Appellants claim that they did preserve error, deny that they owe a duty under the DTPA to inform their insured of the settlement offers, and argue that the court erred in its award of attorney's fees. Appellants argue that they did not breach the *Stowers* duty, since the settlement offers would have been rejected by a reasonably prudent person, and that the jury's finding on damages was not supported by legally or factually sufficient evidence. Appellants also deny that third parties can assert a duty to process claims in good faith under either the DTPA or the common law. Further, appellants argue that even if such a duty exists, the evidence was legally and factually insufficient to support such a claim under the facts of this case. Appellee brings one cross-point, alleging that it was error for the trial judge to exclude from the jury charge a request for a finding on unconscionability on the part of Trinity. We reverse in part and affirm in part and remand for further proceedings.

## Factual Background

In the early morning hours of July 14, 1990, Ronnie Dale Bleeker was driving his Chevrolet Blazer northbound on Interstate Highway 35 near Georgetown, Texas, while

---

1. *G.A. Stowers Furniture Co. v. American Indemnity Co.,* 15 S.W.2d 544, 547 (Tex.Com.App.1929) held that "where an insurance company makes such a contract, it, by the very terms of the contract, assumed the responsibility to act as the exclusive and absolute agent of the assured in all matters pertaining to the questions in litigation, and, as such agent, it ought to be held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business; and if an ordinarily prudent person, in the exercise of ordinary care, as viewed from the standpoint of the assured, would have settled the case, and failed or refused to do so, then the agent, which in this case is the indemnity company, should respond in damages."

under the influence of alcohol. Two families, the Villarreals and the Ochoas, were travelling together to Illinois in a pickup truck and had pulled to the side of the highway to change drivers. Bleeker's vehicle strayed from the road and struck the rear of the parked truck. Filiberto Villarreal was killed, and the thirteen other members of the two families were all injured, many of them seriously.

Bleeker possessed an auto liability insurance policy from Southern County Insurance Company for the minimum required by law, $20,100 per person and $40,000 per accident. Trinity Universal reinsured Southern County's policies and handled their claims. Bleeker had no assets other than the insurance policy with which to pay damages assessed against him. The Villarreals and the Ochoas quickly incurred substantial medical bills, and the hospitals that had been treating the families attached liens in excess of the $40,000 policy limits within thirty days of the collision.

Albert Villegas was hired to represent Idalia Villarreal and her minor children, as well as the estate of Filiberto Villarreal. Villegas testified that he made repeated oral offers to settle the claims of the clients he represented for as little as $20,000, which were all rejected. Eventually he sent a letter containing an offer to settle in exchange for interpleading $40,000. This offer stated that it would expire in thirty days. Although Villegas was later hired to represent the Ochoas and the remaining Villarreals, Victor and Amalia, he was not their lawyer at the time the letter was sent. At the time of the letter, he had not been in contact with the hospitals regarding their liens. The letter stated:

> ... I hereby make demand for full policy limits on behalf of my clients. As there are other claimants, such demand can be met by depositing the full policy limits into the Registry of the Court in Hidalgo, County, Texas with the District Clerk.

> If such funds are not deposited within thirty days (30), we will proceed against your client to trial and seek full damages. You are aware of the Stowers doctrine and the responsibility to your insured as well

as *Allstate v. Kelly,* so that your insured is not put at risk.

Trinity did not deposit any funds into the registry of the court, either within the thirty day period or later. Trinity did tell Villegas that they would like to settle the case for full policy limits if a release from all parties could be secured as part of the settlement arrangement. Trinity did not contact Bleeker to discuss Villegas's letter or the oral settlement offers. After the expiration of the settlement offer, Villegas took on the representation of the Ochoas and the remaining members of the Villarreal family. He proceeded with the case against Bleeker, and in January 1994 a judgment was entered against Bleeker for damages exceeding $11 million. In a subsequent proceeding, the plaintiffs acquired turn over of Bleeker's cause of action against his insurance company. In July 1994, this suit was filed in Bleeker's name against Trinity, resulting in the judgment for $77,021,860.50.

### The Adequacy of the Oral Offers and the Settlement Demand

The parties dispute whether the oral offers of settlement testified to by Villegas are sufficient to activate a *Stowers* duty. Appellants presented no evidence to controvert Villegas's testimony as to the oral offers, rather they argued at trial and here on appeal that settlement offers should be in writing to trigger the *Stowers* duty. Appellants refer to rule 11 of the Texas Rules of Civil Procedure as support for their position. This reliance is misplaced. Rule 11 requires that settlement *agreements* be in writing, not that settlement *offers* be in writing. Generally speaking, settlements are governed by the principles of contract law. *Shaw v. Kennedy,* 879 S.W.2d 240, 247 (Tex.App.—Amarillo 1994, no writ); *Stewart v. Mathes,* 528 S.W.2d 116, 118 (Tex.Civ.App.—Beaumont 1975, no writ). Under contract law, oral offers are valid to the same extent as written offers.

Appellants argue that there is no evidence that Trinity was afforded a reasonable time to evaluate the oral offers, as required by *American Physicians. See American Physicians Insurance Exchange v. Garcia,*

876 S.W.2d 842, 848 (Tex.1994). Villegas testified that he made the oral offers before submitting his written demand. There was no evidence that any deadline for accepting Villegas's settlement offers was imposed prior to the written demand. Appellants acknowledge that the written offer afforded Trinity a reasonable time to evaluate the offer. Clearly, the oral offers that were made before the written offer and without imposing any deadline of their own gave Trinity a reasonable time to evaluate them.

■ Appellants also argue that Villegas's letter does not initiate a *Stowers* duty because it did not mention a release of claims against Bleeker. For authority, they quote *American Physicians,* wherein the Texas Supreme Court said "[A] *Stowers* settlement demand must promise to release the insured fully in exchange for" a sum not exceeding the policy limits. *Id.* The intention of Villegas's letter to offer a settlement to Trinity was clear. Villegas offered expert testimony that the phrase in his letter "demand for full policy limits" indicates to those in the field of insurance law that "I want all of the policy limits on behalf of my clients because of the damages I've got and I'm going to give you a release." He testified that the language of the letter was similar to language he had used throughout his fourteen years practicing in the area of personal injury law. Appellants presented expert testimony of their own asserting that this language does *not* mean that a release is being offered. However, Villegas also specifically mentioned the *Stowers* doctrine in his letter. The reference to *Stowers* is a non sequitur unless placed in the context of an offer of a release as part of a settlement. We hold that a letter sent to an insurance company making a "demand for full policy limits" and mentioning the *Stowers* doctrine should be understood to propose a settlement.

■■ Appellants also argue that the hospital liens which were already in existence at the time of Villegas's offers and already exceeded the policy limits prevented any offer from Villegas from being within policy limits. This argument mistakes the impact of liens. A lien does not confer actual ownership. *Bankers Home Bldg. & Loan Ass'n v. Wyatt,* 139 Tex. 173, 162 S.W.2d 694, 696 (1942); 50 TEX. JUR.3d *Liens* § 1 (1986). Until Trinity actually paid some of the policy limits to the hospitals, Trinity retained the full policy limits. The existence of hospital liens in excess of the policy limits does not excuse them from the duty imposed by *Stowers* to respond to the offer as would a reasonably prudent person.

We conclude that both the oral offers to settle the claims of Villegas's clients for $20,000 and the written offer to settle by interpleading $40,000 must be considered in this case.

### The Admissibility of the MaGuire Letter

■ Appellants allege error in the admission of plaintiff's exhibit 12, a copy of a letter sent June 9, 1992 from Michael MaGuire, Bleeker's criminal defense counsel, to Kattie Honey of Trinity. This letter was offered into evidence by the appellee during the examination of Craig Vittitoe, Bleeker's civil counsel. Trinity now complains that its hearsay objection at trial was improperly overruled. Appellee argues that a proper objection to hearsay was never made, and thus the exhibit is admissible.

We believe that a proper hearsay objection was made. In arguing its objection to the trial judge, Trinity's counsel said "I don't think that he can probably prove it up. I don't think he can authenticate the document." When counsel refers to "proving it up" and "authenticating the document" he is clearly arguing that exceptions to the hearsay exclusion rule do not apply.

The trial court admitted the document under the "business records" exception to the hearsay exclusion rule. *See* TEX. R. CIV. EVID. 803(6). Appellate review of a trial judge's decision to admit evidence is governed by an "abuse of discretion" standard. *Tracy v. Annie's Attic,* 840 S.W.2d 527, 531 (Tex.App.—Tyler 1992, writ denied); *Jones v. Jones,* 890 S.W.2d 471, 474 (Tex.App.—Corpus Christi 1994, writ denied). The trial judge based his decision to admit the exhibit on Vittitoe's testimony that the letter had been recorded as received in the regular course of business by his law firm, and that it

had been retained in the case file according to regular business practices. With knowledge of those facts, we hold that it was not abuse of discretion for the trial judge to admit the letter into evidence. Appellant's point of error alleging that the Maguire letter was improperly admitted is overruled.

### Bleeker's Testimony as to Trinity's Handling of His Case

■■■ Appellant argues that all recovery must be denied in this case because Bleeker testified that he agreed with Trinity's pursuit of a complete release of all parties as part of any settlement agreement. In support of this argument, appellants cite *Charles v. Tamez*, 878 S.W.2d 201, 208–09 (Tex.App.— Corpus Christi 1994, writ denied). We believe the facts of *Charles v. Tamez* distinguish it from this case. That case began in a similar fashion to this one. Tamez, whose only assets were an insurance policy with limits of $20,000, was responsible for a traffic accident. All the parties agreed that his liability well exceeded $20,000. Tamez's lawyers refused a settlement offer for the policy limits because the plaintiff was not offering a release from all potential claimants and the hospitals that held liens. The plaintiff's settlement offer expired and the plaintiffs sued Tamez for his negligence in the traffic accident, obtaining a judgment for $180,000. As Tamez was unable to pay the judgment from his own resources, the plaintiffs sought to compel Tamez to turn over his cause of action against his lawyers under the *Stowers* doctrine for failing to accept the settlement offer. Tamez opposed the turnover, stating that he would not have wanted to accept the settlement offer, and turnover was denied by the trial court. Because of public policy concerns about the relationship between lawyers and clients, we refused to reverse the judgment and order turnover of a *Stowers* claim when the client refused to assert the claim and denied dissatisfaction with his attorneys. *Id.* at 206–09.

In this case, Bleeker never opposed the turnover order. No appeal was taken from the turnover order, and this argument is being urged for the first time after the completion of the trial on the *Stowers* case brought in Bleeker's name against his insurance company. Trinity is essentially arguing that the turnover order should not have been granted. However, the turnover order is not part of the judgment of this case. If the turnover order was to be challenged on grounds that the *Stowers* claim was opposed by Bleeker, that claim should have been made by Bleeker as an appeal of the turnover order, which was not done.

Bleeker's testimony also fails to indicate the same level of agreement with his attorneys and insurers that was expressed by Tamez. In a deposition after the completion of the trial assessing his liability for the traffic accident, Bleeker was asked repeatedly whether he would have preferred to obtain a release of all parties. Not surprisingly, he answered "yes," and "that would be best." Bleeker was never asked, either while the settlement offer was open or during his later deposition, whether he would approve of the settlements his insurer was offered, asking either for $20,000 or interpleader of the policy limits in exchange for a release of some, but not all, of the plaintiffs. In contrast, Tamez challenged the turnover order in court and stated that he would not have wanted to accept the settlement offer that was presented to his attorneys. As there is no evidence that Bleeker ever challenged or opposed the turnover of his cause of action against his insurers, we hold that *Charles v. Tamez* does not control this case, and decline to reverse the judgment on these grounds.

### Waiver for Failure to Properly Object

■■■ Appellee also contends that appellants waived their right to complain about the DTPA claim in question two. *See Allen v. American Nat'l Ins. Co.*, 380 S.W.2d 604 (Tex.1964) (judgment upheld when no objection is made to defective submission of a controlling issue). Appellee describes any flaw in his misrepresentation theory as merely a defective submission. He argues that under *Spencer v. Eagle Star Insurance Company*, 876 S.W.2d 154, 157 (Tex.1994), an affirmative jury finding on a defective submission of a statutory cause of action precludes judgment notwithstanding the verdict

and requires either a judgment on the verdict or the granting of a new trial.

Rule 279 of the Texas Rules of Civil Procedure states that "[a] claim that evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after the verdict." TEX.R. CIV. P. 279. Appellants objected at trial during the charge conference, and reiterated their objection in a motion for judgment notwithstanding the verdict and a motion to disregard jury findings. The objection to question two made during the charge conference stated "as a matter of law, this question is not recoverable in this type of case." Appellants' motion to disregard the jury findings argued that "there is no evidence" to support the jury's findings under question two. This argument was also made in appellants' motion for judgment notwithstanding the verdict. Accordingly, we hold that appellants rightfully preserved error on their challenge to the legal sufficiency of the evidence to support the findings under question two.

### Appellee's DTPA Claim for the Failure to Inform the Insured

Appellee contends that appellants' failure to inform their insured of the settlement offer was a violation of the DTPA. They argue that because the jury question on this issue, number 2D, borrowed language from the statute, the trial court was required to render judgment for the plaintiff when the jury returned an affirmative finding. Appellants contend that they had no duty, either statutory or otherwise, to inform Bleeker of the settlement offer, and that the evidence was factually and legally insufficient to prove that the alleged violation of the DTPA was a producing cause of Bleeker's damages.

When we review a legal sufficiency challenge, we consider only the evidence and inferences that would support a finding on the disputed point and disregard all evidence to the contrary. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992); *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). If the finding is supported by probative evidence, then we overrule the point and uphold the finding. *Southern States Transp.,* 774 S.W.2d at 640. However,

"[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983). We reverse a judgment on factual sufficiency only when the evidence is so weak as to render the verdict clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

The relevant portions of the DTPA, as codified in the Business and Commerce Code, incorporate portions of the Insurance Code and relevant regulations:

A consumer may maintain an action where any of the following constitute a producing cause of actual damages ...

(4) the use or employment by any person of an act or practice in violation of Article 21.21, Texas Insurance Code, as amended, or the rules and regulations issued by the State Board of Insurance under Article 21.21, Texas Insurance Code, as amended.

TEX. BUS. & COM.CODE ANN. § 17.50(a) (Vernon 1987). Insurance Code Article 21.21 § 16(a) grants a cause of action to:

Any person who has been injured by another's engaging in any of the practices declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition and unfair and deceptive acts or practices in the business of insurance ...

TEX. INS.CODE ANN. Article 21.21 § 16(a) (Vernon 1981).

None of the practices defined in Article 21.21 section 4 as "unfair methods of competition and unfair or deceptive acts" are involved in this case. The State Insurance Board has supplemented the list of practices in section 4 of article 21.21 with regulations in a subchapter of the Texas Administrative Code titled "Unfair Competition and Unfair Practices of Insurance and Misrepresentation of Policies." 28 TEX. ADMIN. CODE § 21 (West 1995). A definition from that portion of the Texas Administrative Code was ap-

plied in question 2D(3) jury charge. The regulation provides:

> [T]he term 'misrepresentation'... is defined as any of the following acts or omissions: (5) any failure to disclose a matter required by law to be disclosed ...

28 TEX. ADMIN. CODE § 21.4(5) (West 1995). The jury question took the "any failure to disclose a matter required by law to be disclosed" language of the regulation's definition and inserted "the existence of an offer to settle" as "a matter required by law to be disclosed." The jury question asked:

> Did the insurance company knowingly engage in any unfair or deceptive act or practice in the business of insurance which was a producing cause of the Final Judgment?
>
> "Unfair or deceptive act or practice" means any of the following:
>
> D. Making any misrepresentation relating to insurance. "Misrepresentation" means any of the following:
>
> 1. any failure to state a material fact that is necessary to prevent the statements made from being misleading, when these statements are considered in the light of the circumstances under which they are made; or
>
> 2. the making of any statement in such a manner or order as to mislead a reasonably prudent person to a false conclusion of a material fact; or
>
> 3. the failure to disclose the existence of an offer to settle;

The first two parts of the definition cannot be relied on for the judgment in this case. Appellee failed to present any evidence regarding any misleading statements by Trinity, or any failure to state facts which allowed other statements to be misleading. The only part of the definition that could be supported by the evidence presented in this case deals with part three, "failure to disclose the existence of an offer to settle."

Texas courts have recognized that the failure to disclose the existence of a settlement offer may constitute a violation of the DTPA. *American Physicians*, 876 S.W.2d at 847 n. 11; *Ecotech Int'l, Inc. v. Griggs & Harrison*, 928 S.W.2d 644, 649 (Tex.App.—San Antonio

1996, writ denied). However, in this case, no damages resulted to Bleeker from the failure to inform him of the settlement offers. Appellees have offered no evidence to show that the failure to inform Bleeker of the settlement offers was the producing cause of Bleeker's damages. Appellees argue only that if the settlement offer had been accepted, then the excess damages award would have been avoided. Regardless of the merit of that assertion, it does not establish that simply informing Bleeker of the settlement offer would have been enough to prevent the excess judgment that forms the basis of Bleeker's damages. At a minimum, appellees needed to prove that informing Bleeker of the settlement offer would have led to the offer being accepted. This they failed to do.

During his deposition following the trial, Bleeker was never asked whether he would have favored accepting a settlement like the one proposed by Villegas. There is nothing in Bleeker's testimony to indicate that he would have wanted to accept Villegas's offer. Bleeker did testify that he was relying on the advice of his lawyers, who favored rejecting the offer. Appellee's only evidence that Bleeker would have wanted to accept Villegas's settlement offer is the Maguire letter. In the letter, MaGuire states that he has discussed an offer from Villegas with Bleeker. Appellee points to the portion of the letter where MaGuire states "if we (MaGuire and Bleeker) had been informed (of Villegas's offer) we would have agreed to it."

However, it is clear from other portions of the letter, which appellee does not mention, that MaGuire's opinion at that time was uninformed. MaGuire acknowledges that he is not "personally familiar with the truth of Villegas's facts and/or claims and do not have personal knowledge of the letter of April 16." Later, when Maguire saw the actual text of the April 16, 1991 letter, he changed his position and indicated that he felt the settlement offer it contained should not be accepted. Based on Bleeker's testimony that he preferred to follow the advice of counsel, we presume that Bleeker would have acquiesced with MaGuire's changed advice and would not have wanted to accept the settlement offer.

There is no evidence that Bleeker would have wanted to accept the settlement offer if he had been informed of it, and therefore no causal connection between appellants' failure to inform him of the settlement offer and the excess judgment entered against Bleeker. We sustain appellants' point of error pertaining to the legal insufficiency of the evidence to support appellee's claim under the DTPA for failure to inform the insured of settlement offers.

## Attorney's Fees

The award of attorney's fees was premised on the DTPA claim. Since we have reversed the judgment of the trial court on that issue and hold that appellants were not entitled to recover on the DTPA claim, no attorney's fees are proper. We sustain the point of error alleging error in the award of attorney's fees.

## The *Stowers* Claim

■ The jury also returned a verdict in support of appellee's *Stowers* claim. Question 1 of the jury charge lifted language directly from *Stowers:*

### Question NO.1

Was the insurance company's failure to settle negligence which proximately caused the Final Judgment?

"NEGLIGENCE" means the failure to exercise that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business in responding to settlement demands, if any, within the insurance policy limits.

If an ordinarily prudent person in the exercise of ordinary care would have settled the case by accepting an offer to settle, but the insurance company failed or refused to do so, then the insurance company is negligent. The duty to settle implies the duty to negotiate.

First, appellants argue that the trial court erred in instructing the jury that "[t]he duty to settle implies the duty to negotiate." Appellant argues that this sentence imposes a duty on insurers to make settlement offers, in contravention of *American Physicians,* 876 S.W.2d 842, 849 (Tex.1994). That case rejected the position that "insurers rather than claimants have a duty to make settlement offers." *Id.* at 851 n. 17. We do not agree that requiring insurers to "negotiate" necessarily includes a requirement that they initiate settlement offers.

There is other authority from the Texas Supreme Court indicating that a jury instruction including the phrase "the duty to settle implies the duty to negotiate" is appropriate. *See Ranger County Mut. Ins. Co. v. Guin,* 723 S.W.2d 656, 660 (Tex.1987). In that case the jury considered a jury instruction that was very similar to the one used in this case and contained the sentence "The duty to settle implies the duty to negotiate." The court said "[t]he instructions given by the trial court properly explained the basis upon which the jury could find negligence in a case of this type." *Id.* We find no error in the instruction "[t]he duty to settle implies the duty to negotiate."

■ Appellants also argue that the evidence was legally and factually insufficient to support an affirmative finding on this issue. Villegas offered a settlement of his clients in exchange for depositing the policy limits of $40,000 into the registry of the court for an interpleader proceeding. While this action would not have prevented any claimant from suing Bleeker directly, it would have prevented any claimant from taking a portion of the policy limits without submitting to the interpleader proceeding. TEX R. CIV. P. 43; *see, e.g. Great Am. Reserve Ins. Co. v. Sanders,* 525 S.W.2d 956, 958 (Tex.1975) (insurance company facing multiple claims for same life insurance policy proceeds may use interpleader to limit its liability to face amount of policy). Once the policy limits were spoken for, Bleeker was, by all accounts, so limited in his own financial resources as to be judgment proof. Under these circumstances, it is highly likely that all the claimants would have been content with a share of the disbursement of the policy limits through the interpleader proceeding rather than pursue a futile liability case against Bleeker after the policy limits were gone. However, by refusing to tender

the policy limits into the registry of the court in a timely manner, Trinity left the claimants no alternative but to sue Bleeker directly.

Appellants argue that there is no evidence to support including the claims of those not represented by Villegas at the time of the settlement offers in the calculation of damages resulting from Trinity's breach of the *Stowers* duty. However, Villegas testified that if Trinity had chosen to take advantage of the interpleader process the excess damages award, including the claims of all the claimants, would have been avoided because of the Bleeker's inability to pay claims beyond the limits of his insurance policy.

We hold that there is some evidence that an ordinarily prudent person in the exercise of ordinary care would have deposited the policy limits into the registry of the court as urged by Villegas's settlement offer. There is also some evidence that taking this action would have prevented the entire excess judgment that was entered against Bleeker. We can not say that the jury's finding of a breach of the *Stowers* duty and the finding on the damages resulting from that breach are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. We overrule appellants' points of error challenging the sufficiency of the evidence supporting the jury's finding on the *Stowers* issue.

### The Good Faith Claims

The issue of whether an insurer owes its insured a duty of good faith and fair dealing when faced with third party claims against the insured was squarely addressed in a recent case from the Texas Supreme Court. *Maryland Ins. Co. v. Head Indus. Coatings and Servs,* 938 S.W.2d 27 (Tex.1996) (per curiam). The court unequivocally rejected such a cause of action, holding that "Texas law recognizes only one tort duty in this context, that being the duty stated in *Stowers*." *Id.* at 28.

Appellants' points of error pertaining to the good faith and fair dealing claims are sustained.

2. The DTPA provides for recovery of damages caused by "any unconscionable action or course

### Cross-Point on Unconscionability

 Appellee brings a single cross-point, arguing that it was error for the trial judge to refuse to submit an issue to the jury regarding unconscionability under the DTPA.[2] The elements of a DTPA unconscionability claim are 1) the plaintiff is a consumer, 2) an unconscionable act or course of action by any person, and 3) the unconscionable act or course of action is a producing cause of the plaintiff's damages. *Miller v. Soliz,* 648 S.W.2d 734, 739 (Tex.App.—Corpus Christi 1983, no writ). An "unconscionable action or course of action" is "an act or practice which, to a person's detriment: (A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45 (Vernon 1987).

The rejected jury question asked:

Did the insurance company engage in any unconscionable action or course of action that was a producing cause of the entry of Final Judgment?

An unconscionable action or course of action is an act or practice that, to a person's detriment, either -

a. takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree or

b. results in a gross disparity between value received and consideration paid in a transaction involving transfer of consideration.

 Rule 278 of the Texas Rules of Civil Procedure provides a non-discretionary requirement that trial courts submit requested questions to the jury if the pleadings and any evidence support them. Tex.R. Civ. P. 278; *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992). When there is no evidence to support the submission of an issue, the trial judge acts appropriately by excluding it from the jury charge. *Musser v. Smith Protective Servs., Inc.,* 723 S.W.2d 653, 655 (Tex. 1987). However, reversal is required when a party is denied submission of a valid theory raised by pleadings and evidence. *Exxon*

of action by any person." Bus. & Com.Code Ann. § 17.50(a)(3) (Vernon Supp.1997).

*Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex. 1992).

Appellant argues that there was no evidence to support the submission of this question. We disagree. In this case, an unsophisticated insured placed his trust in his insurance company to handle settlement offers on his behalf. By rejecting Villegas's offer of a release in exchange for interpleading policy limits, Trinity left Bleeker open to the multimillion dollar excess judgment that was entered against him. We hold that these facts present at least some evidence that Trinity took advantage of Bleeker to a grossly unfair degree. Similarly, these facts present at least some evidence of a gross disparity between the consideration paid by Bleeker in the form of insurance premiums and the value he received in the form of representation by Trinity.

Appellee's cross point is sustained.

### Disposition

The judgment of the trial court is AFFIRMED with regards to the *Stowers* claim and REVERSED with regards to the DTPA and good faith claims. We REMAND the issue of unconscionability for further proceedings not inconsistent with this opinion.

SEERDEN, C.J., dissents.

SEERDEN, Chief Justice, dissenting.

I respectfully dissent. I would hold that Bleeker's uncontroverted satisfaction with the representation he received from Trinity left no viable *Stowers* claim to be turned over to the plaintiffs.

Bleeker testified by deposition that he wanted the insurance company to obtain a release from all claimants, that he relied on the advice of his counsel at the time, who told him that he was trying to get all of the claimants together for settlement, and that he did not have any reason to believe that his counsel was not acting in his best interest or that Trinity was acting unconscionably.

The duty to settle lawsuits under *Stowers* is an essentially personal duty owed by the insurance company to its insured. *See Charles v. Tamez*, 878 S.W.2d 201, 208 (Tex. App.—Corpus Christi 1994, writ denied). We recognize that an insured's right to sue for failure to settle is subject to both equitable subrogation and assignment. *See American Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 482–84 (Tex.1992); *Tamez*, 878 S.W.2d at 208.[1]

However, the underlying claim to be transferred must be viable. The assignment or turnover of a claim that is lacking in any essential element transfers nothing. *Stowers* is based on the proposition that the insurer was negligent in responding to a settlement demand within policy limits. *G. A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544, 547 (Tex.Comm'n App.1929, holding approved). The insurer could not be held negligent with regard to its insured, however, unless the insured was himself dissatisfied with some aspect of the manner in which the insurer handled the claims being made against him.

In the present case, Bleeker made no complaint about the manner in which Trinity handled the present claims, and Bleeker agreed with the decision not to settle less than all of the claims against him for policy limits. Trinity never refused to pay the amount of the policy, but merely refused to settle with less than all of the claimants, including those holding hospital liens. Bleeker indicated his approval of Trinity's conduct and, absent any complaint, could not have raised a *Stowers* cause of action against Trinity. Because Bleeker had no *Stowers* claim to be turned over, the real parties in interest cannot be allowed to create a claim on his behalf for their personal interest.

---

1. In *Tamez,* we held that public policy bars the turnover of an unasserted, denied *Stowers* cause of action against an insurer, or against the attorney for legal malpractice, for failure to settle a lawsuit. *Tamez*, 878 S.W.2d at 208; *see also Dauter–Clouse v. Robinson*, 936 S.W.2d 329, 332 (Tex.App.—Houston [14th Dist.] n.w.h.) (bankrupt debtor in Texas does not have an interest subject to inclusion in his estate, in an unasserted, denied legal malpractice claim). We reasoned that allowing a party to force a *Stowers* lawsuit on behalf of a satisfied opponent does not promote the specific purpose of the turnover statute or the overall purpose of the Texas legal system. *Tamez*, 878 S.W.2d at 208.

Accordingly, I would reverse and render judgment for Trinity.