**Robert M. ETIENNE, Plaintiff,**

v.

**WOLVERINE TUBE, INC., Defendant.**

**No. 98–2010–JWL.**

United States District Court,
D. Kansas.

June 2, 1998.

Gregory M. Dennis, Richard W. Noble, The Noble Group, P.C., Brendan J. Donelon, Kansas City, MO, for plaintiff.

Henry R. Cox, The Campbell Law Firm, Kansas City, MO, M. Todd King, Douglas M Towns, Jones, Day, Reavis & Pogue, Atlanta, GA, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

By this diversity action, plaintiff seeks damages for breach of an employment contract. The matter is presently before the court on defendant's motion to dismiss for lack of personal jurisdiction, lack of venue, and failure to state a claim, or alternatively for transfer of venue (Doc. 7). For the reasons set forth below, the court denies the motion in its entirety.

### I. Background [1]

Plaintiff is a Kansas resident. Defendant is a Delaware corporation with its principal place of business in Alabama. In July 1997, plaintiff contacted defendant about a position available as defendant's Vice President of Human Resources. In July and August, plaintiff made three trips to Alabama at defendant's request to discuss possible employment with defendant. Plaintiff also traveled to North Carolina at defendant's request for a leadership evaluation by Doug Anderson, who was acting as defendant's agent.

On August 26, 1997, John Quarles, defendant's CEO, telephoned plaintiff at his Kansas home and extended an oral offer of employment. Plaintiff requested that the offer be reduced to writing. On August 27, defendant faxed to plaintiff in Kansas a letter setting forth the terms of the offer. The next day, plaintiff received by overnight mail in Kansas an original of that letter, signed by Mr. Quarles, as well as a severance agreement and other documents. The letter began as follows:

> I am pleased to extend to you an offer for the position of Vice President of Human Resources for Wolverine Tube, Inc. We have completed thorough reference checks

1. These facts are taken from plaintiff's amended complaint.

and are pleased that this feedback confirmed our view that you are our candidate of choice.

The job location is in Huntsville and will report to the CEO. We would like to have you here as soon as practical. A medical and psychological examination is required prior to employment.

At the end of the letter, after the signature of Mr. Quarles, was a place for plaintiff's signature under the following language: "Please indicate your acceptance of this offer by signing in the space provided."

On August 29, 1997, plaintiff in Kansas spoke with defendant's agent, Mr. Anderson, by phone. Plaintiff asked whether defendant would pay for a health club membership instead of a country club membership, as offered in the letter. Plaintiff also requested a cellular phone at defendant's expense and inquired about moving expenses. After speaking with James Deason, defendant's chief financial officer, Mr. Anderson contacted plaintiff and stated that those requests would not be a problem. On August 31, 1997, plaintiff signed the letter and sent it to defendant by mail.

On September 2, 1997, at defendant's request, plaintiff traveled to North Carolina to take tests administered by psychologist David Hanson. On September 5, 1997, Mr. Quarles telephoned plaintiff in Kansas and, according to plaintiff's complaint, "informed plaintiff that Wolverine was terminating its contract with plaintiff" because of Dr. Hanson's evaluation. On January 9, 1998, plaintiff brought the instant action for breach of contract.

## II. Personal Jurisdiction

■ Defendant first argues that plaintiff's action must be dismissed for lack of personal jurisdiction. The party bringing the action bears the burden of establishing personal jurisdiction over the defendant. *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir.1996). When the motion is decided on the basis of affidavits and other written materials, however,

the plaintiff need only make a prima facie showing, and all factual disputes are resolved in that party's favor. *Id.*

■ In a diversity suit such as this one, the court determines its jurisdiction over a nonresident defendant by the law of the forum state. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304 (10th Cir.1994). The court engages in a two-part inquiry, determining "whether the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state and comports with due process requirements of the Constitution." *Id.* at 1304–05.

### A. Long–Arm Statute

Under the Kansas long-arm statute, a party submits to the jurisdiction of courts in this state "as to any cause of action arising from the doing" of certain enumerated acts, including the "[t]ransaction of any business within this state." K.S.A. § 60–308(b)(1).[2] Defendant argues that its contacts with Kansas, consisting only of communications with plaintiff by telephone, telefacsimile, and mail, do not constitute the "transaction of any business" within Kansas for purposes of long-arm jurisdiction.[3]

It is true that "the Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process." *Federated Rural*, 17 F.3d at 1305 (citing *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 740 P.2d 1089 (1987)). "This rule of liberal construction, however, does not mean that the court may ignore the long-arm statute's enumerated provisions." *Electronic Realty Assocs., L.P. v. Paramount Pictures Corp.*, 935 F.Supp. 1172, 1175 (D.Kan.1996); *see also Volt Delta Resources*, 241 Kan. at 777–78, 740 P.2d 1089 (engaging in two-step inquiry involving satisfaction of section 60–308(b)(1) and due process); *Three Ten Enters., Inc. v. State Farm Fire & Casualty Co.*, 24 Kan.App.2d 85, 90–91, 942 P.2d 62 (1997) (court may not ignore statute under

---

2. Plaintiff also asserts that jurisdiction is proper under K.S.A. § 60–308(b)(5); that provision does not apply, however, because the contract here was not "to be performed in whole or in part by either party in this state." *Id.*

3. Because it concludes that jurisdiction is proper here, the court will address this argument, which defendant raised only in its reply brief.

guise of liberal construction), *review denied* (July 12, 1997).

■ The Kansas Supreme Court has set forth the following standard for long-arm jurisdiction under section 60–308(b)(1):

> "Business" is transacted within the state when an individual is within or enters this state in person or by agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires. The transaction of business exists when the nonresident purposefully does some act or consummates some transaction in the forum state.

*Volt Delta Resources,* 241 Kan. at 778, 740 P.2d 1089 (citation omitted). A nonresident need not physically enter the state to transact business here for purposes of the long-arm statute. *Buford v. First Sunset Dev., Inc.,* 1995 WL 396608, at \*3 (D.Kan. June 9, 1995); *Thermal Insulation Sys. v. Ark–Seal Corp.,* 508 F.Supp. 434, 437–42 (D.Kan.1980); *Schlatter v. Mo–Comm Futures, Ltd.,* 233 Kan. 324, 337, 662 P.2d 553 (1983); *Environmental Ventures, Inc. v. Alda Services Corp.,* 19 Kan.App.2d 292, 296, 868 P.2d 540 (1994).

■ The court concludes that defendant is subject to the jurisdiction of this court under a liberal construction of section 60–308(b)(1). Defendant argues that it did not physically enter the state and that plaintiff made the initial contact with defendant. Nevertheless, defendant purposefully directed communications into Kansas in order to consummate a transaction, specifically the execution of an employment contract with plaintiff. The court does not agree with defendant's present assertion that its contacts with plaintiff in Kansas "were not part of an effort to improve [its] economic condition"; presumably, defendant did not offer plaintiff a job for altruistic reasons, but rather because such action served its own interests.[4]

The court thus concludes that defendant's negotiation of an employment contract with plaintiff by means of communications into

Kansas constitutes the transaction of business within Kansas for purposes of long-arm jurisdiction. *See Wright v. Frank E. Basil, Inc.,* 1985 WL 12777, at \*1–2 (D.Kan. Oct. 30, 1985) (defendant transacted business under section 60–308(b)(1) where it sent an offer of employment to plaintiff in Kansas and plaintiff accepted the offer here, even though plaintiff first solicited defendant); *see also Runnels v. TMSI Contractors, Inc.,* 764 F.2d 417, 421–23 (5th Cir.1985) (defendant was subject to long-arm jurisdiction under "transaction of business" prong where it directed communications into the forum state concerning employment outside the state); *Boudreau v. Scitex Corp.,* 1992 WL 159667, at \*2 (D.Mass. June 25, 1992) (same); *Garrett v. Ruth Originals Corp.,* 456 F.Supp. 376, 380 (S.D.Ohio 1978) (same); *Aetna Casualty & Surety Co. v. Crowther, Inc.,* 221 Ill.App.3d 275, 163 Ill.Dec. 679, 581 N.E.2d 833, 836 (1991) (same).

### B. Due Process

■ The court further concludes that the exercise of long-arm jurisdiction here would not violate due process. The touchstone of this constitutional inquiry is whether the nonresident party purposefully established "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Federated Rural,* 17 F.3d at 1305. This standard may be met in two ways:

> First, a court may exercise *specific* jurisdiction if a defendant has purposefully directed his activities at residents of the forum *and* the litigation results from alleged injuries that arise out of or relate to those activities. Second, a court may exercise *general* jurisdiction where the defendant's contacts, while not rising to the level of the traditional notion of presence in the forum state, are nonetheless "continuous and systematic". Where general jurisdiction lies the state may exercise personal jurisdiction over the defendant, even if the

---

4. Moreover, the commerce of Kansas is affected because plaintiff was required to leave his employment and residence in Kansas to work in Alabama, and so withdraw his "human capital" from the state; this impact on the state is greater than in the simple case where a resident con-

tracts with a nonresident to perform services out of state, but the resident maintains his residence or place of business within the forum. *See Garrett v. Ruth Originals Corp.,* 456 F.Supp. 376, 380 (S.D.Ohio 1978).

suit is unrelated to the defendant's contacts with the state.

*Kuenzle,* 102 F.3d at 455–56 (citations and footnote omitted). Plaintiff does not contend that defendant's contacts with Kansas have been "continuous and systematic". Thus, the court considers its specific jurisdiction here.

For jurisdiction to lie, there must be some act by which the nonresident party "purposefully avails itself of the privilege of conducting activities in the forum State." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). That requirement ensures that the party "will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* The contacts with the forum state should be such that the party "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Supreme Court has justified such jurisdiction as follows:

> We have noted several reasons why a forum legitimately may exercise personal jurisdiction over a nonresident who "purposefully directs" his activities toward forum residents. A State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. Moreover, where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.

*Burger King,* 471 U.S. at 473–74, 105 S.Ct. 2174 (citations omitted).

■ Although a contract with a resident does not by itself establish sufficient minimum contacts with the forum state, prior negotiations and the parties' actual course of dealing must be evaluated in determining whether a nonresident "purposefully established minimum contacts within the forum." *Id.* at 479, 105 S.Ct. 2174.

■ The court concludes that plaintiff has established that defendant made sufficient contacts with the forum state here. Defendant purposefully negotiated and executed an employment contract with a Kansas resident over the phone and by mail into Kansas. *See Rambo v. American S. Ins. Co.,* 839 F.2d 1415, 1418 (10th Cir.1988) (telephone calls and letters may provide sufficient contacts to satisfy due process); *Continental American Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1314 (10th Cir.1982) ("We recognize that modern commercial transactions often involve little contact with the forum beyond that of mail and telephone communications . . . ."). Moreover, as previously stated, defendant did attempt to derive an economic benefit from that activity. Defendant's contacts with Kansas were not "random, fortuitous, or attenuated," as in the case of a product that eventually makes its way to the forum state. Defendant purposefully directed its activities at this state, and therefore it should reasonably have anticipated being haled into court here. *See Continental American Corp.,* 692 F.2d at 1314 (rejecting a due process challenge to jurisdiction in Kansas where the defendant merely made two payments to the Kansas resident).

■ Once the nonresident's minimum contacts have been established, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174. In other words, the exercise of jurisdiction must be reasonable. *Rambo,* 839 F.2d at 1419 n. 6. Where a nonresident has purposefully directed its activities at the forum state's residents, it must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174

■ Defendant has not made such a case here. Defendant has not offered any reasons

why the exercise of jurisdiction here would offend traditional notions of fair play and substantial justice. Defendant directed its activities at a Kansas resident, and it attempted to derive an economic benefit from its business dealings in this state; thus, the state of Kansas has an interest in providing a forum in which its resident may enforce the contract. *See Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.,* 896 F.2d 1233, 1238 (10th Cir.1990) (concluding that the exercise of jurisdiction was reasonable); *see also Burger King,* 471 U.S. at 474, 105 S.Ct. 2174 (forum state "generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors"); *Equifax Servs., Inc. v. Hitz,* 905 F.2d 1355, 1360 (10th Cir.1990) (state of Kansas has a legitimate interest in holding a nonresident answerable on a claim related to its contacts with the state). Furthermore, the Supreme Court has noted that substantial inconvenience may be addressed by a motion for change of venue. *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (most considerations urged by the nonresident "usually may be accommodated through means short of finding jurisdiction unconstitutional").

 In summary, the court concludes that the requirements of both the Kansas long-arm statute and due process have been satisfied here. The court recognizes that these facts present a close question on the issue of jurisdiction. In the modern business world, however, transactions are routinely consummated by mail, over wires, or even by satellite. In this case, defendant did not physically travel to Kansas to hire plaintiff. Nevertheless, it did enter Kansas by other means to effectuate its business purpose. In this way, defendant's contacts with Kansas were not accidental. As the Supreme Court makes clear, a corporation is not free to transact business in the various states to its own advantage without subjecting itself to those states' jurisdiction for suits arising out of that business, even if the corporation never sends an agent beyond its walls. Accordingly, this court has jurisdiction over defendant, and defendant's motion to dismiss on this basis is denied.

## III. Venue

Defendant also argues that this action should be dismissed for lack of venue. The applicable statute provides as follows:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Paragraphs (1) and (3) do not apply here because defendant is not a Kansas resident and the action could have been brought in the Northern District of Alabama. Thus, venue is proper in this district only if a substantial part of the events giving rise to plaintiff's claim occurred in Kansas.

 The plaintiff has the burden of showing that venue is proper. *Clemons v. Speigel,* 1994 WL 732630, at *2 (D.Kan. Dec.27, 1994). "The court must decide whether the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim." *Andrean v. Secretary of United States Army,* 840 F.Supp. 1414, 1422 (D.Kan.1993). The forum activities must have been events significant to the plaintiff's claim. *Hansen–Moor Assocs. v. Allied B/J Trust,* 1992 WL 190714, at *4 (D.Kan. July 17, 1992). "A substantial part of the events" may have occurred in more than one district, and venue may be proper even if contacts with another district were more substantial. *Setco Enters. v. Robbins,* 19 F.3d 1278, 1281 (8th Cir.1994); *Andrean,* 840 F.Supp. at 1422–23; *Merchants Nat'l Bank v. SafraBank (California),* 776 F.Supp. 538, 541 (D.Kan.1991).

 The court concludes that a substantial part of the events giving rise to plaintiff's breach of contract claim did occur in Kansas.

The negotiation and execution of the contract here took place by way of communications directed into Kansas. In addition, the alleged breach occurred when Mr. Quarles terminated the contract in a telephone call with plaintiff in Kansas.

Defendant relies on *Finance & Marketing Association International, Inc. v. He–Ro Group, Inc.,* 975 F.Supp. 1429 (D.Kan.1997), in which the court stated as follows: "It has been recognized that 'venue for a claim based on breach of contract be [sic] the place of intended performance.'" *Id.* at 1432 (quoting *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 842 (9th Cir.1986)). The employment contract at issue here contemplated performance in Alabama.

The court declines to follow *He–Ro Group* in this instance. *Decker Coal,* on which the *He–Ro Group* court relied, was decided under a different statutory standard, before the venue statute was amended in 1990. At the time of *Decker Coal,* the statute allowed venue only in the district "in which the claim arose" (assuming a non-resident defendant). *Decker Coal,* 805 F.2d at 841. The strict standard set forth in *Decker Coal* suggests that venue would be proper in only one district, while under the more expansive amended version of section 1391, venue may be proper in more than one district.

 The court believes that a more appropriate venue standard for breach of contract actions was enunciated in *PI, Inc. v. Quality Products, Inc.,* 907 F.Supp. 752 (S.D.N.Y.1995): "In determining whether venue is proper for a breach of contract action under § 1391(a)(2), courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." Here, the contract was negotiated, executed, and terminated by way of communications into Kansas. Although the contract was to be performed in Alabama, such performance had not yet begun; a different case might be presented if the parties had performed under the contract in Alabama for a long period of time before an alleged breach of the contract occurred.

Considering the totality of the events leading up to plaintiff's claim, the court concludes that a substantial part of those events occurred in Kansas. *See Lawrence–Leiter & Co. v. Paulson,* 963 F.Supp. 1061, 1062 (D.Kan.1997) (venue was proper in Kansas for breach of contract action where the parties agreed to the terms and executed the contract in Kansas); *Merchants Nat'l Bank,* 776 F.Supp. at 541 (venue was proper where many activities related to the contract occurred by mail and telephone calls into Kansas).

Again, the court is presented with a close question here. The primary events giving rise to this action, however, occurred by means of communications between the two states. Thus, to the extent that these events occurred anywhere, they occurred almost as much in Kansas as in Alabama. Therefore, the court concludes that "a substantial part" of the relevant events occurred in Kansas. Accordingly, venue is proper in Kansas, and defendant's motion to dismiss for lack of venue is denied.

## IV. Transfer of Venue

In the alternative to dismissal for lack of personal jurisdiction or venue, defendant moves for a transfer of venue to the Northern District of Alabama. Motions to transfer are governed by 28 U.S.C. § 1404(a), which provides as follows: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

 Section 1404(a) affords the district court broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir.1991). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Id.* at 1515. "[U]nless the balance is strong in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992) (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.,* 467 F.2d 662, 664 (10th Cir.1972)). The court must consider the following factors in determining whether to transfer a case:

the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.,* 928 F.2d at 1516.

■ Defendant has not established that the present forum is inconvenient and that transfer is warranted here. Defendant suggests that Alabama law governs the contract and that that state has a greater interest in the outcome of the case. The court is not convinced that Alabama law applies here, however, *see infra* note 7, and, as noted in the court's discussion of personal jurisdiction, Kansas retains an interest in the enforcement of contracts with Kansas residents negotiated and executed in this state. Defendant also stresses the residence of party witnesses in Alabama and non-party witnesses in North Carolina. Nonetheless, defendant has not shown a *disproportionate* difficulty or inconvenience in securing the attendance of non-party witnesses. Defendant has not established that the inconvenience of a trial in Kansas outweighs the inconvenience that would be visited on plaintiff if the case were transferred to Alabama. Therefore, because a transfer would succeed only in shifting the inconvenience to plaintiff, the court will not disturb plaintiff's legitimate choice of forum, which is entitled to great weight. *See Heating & Cooling Master Marketers Network, Inc. v. Contractor Success Group, Inc.,* 935 F.Supp. 1167, 1172 (D.Kan.1996); *Pehr v. Sunbeam Plastics Corp.,* 874 F.Supp. 317, 321 (D.Kan.1995).

## V. Failure to State a Claim

Finally, defendant moves to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted. Defendant relies on the provision in the letter requiring a psychological examination and its termination of the contract based on the results of that exam.

■ A court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991). The pleadings are liberally construed, and all reasonable inferences are viewed in favor of the plaintiff. Fed.R.Civ.P. 8(a); *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir.1993). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The court denies defendant's motion to dismiss for failure to state a claim. As a preliminary matter, the court notes that it is difficult to determine the exact basis on which defendant seeks dismissal. Much of the language in defendant's briefs suggests an argument that no contract was formed here because of the failure of a condition requiring satisfactory results from a psychological exam. Other language and the caselaw cited by defendant suggest an argument that plaintiff is not entitled to *performance* of the contract by defendant because of the non-occurrence of a condition. Defendant consistently refers to the provision in the letter as a condition precedent. Therefore, the court will adopt the prevailing definition of that term and construe defendant's motion as advancing the latter argument. *See* Restatement (Second) of Contracts § 224 cmt. c (1981) (excluding pre-contractual events from definition of condition); *id.* § 225 (performance under a contract does not come due upon non-occurrence of a condition); E. Allan Farnsworth, *Contracts* § 8.2 (2d ed.1990) (following Restatement in distinguishing con-

ditions from events that must occur before a contract comes into existence).[5]

The court cannot say that plaintiff could not prove a set a facts entitling him to relief based on his complaint. The letter offer from defendant that plaintiff signed and returned contained the following provision: "A medical and psychological examination is required prior to employment." Defendant asks the court to interpret that provision to mean that plaintiff was not entitled to performance by defendant under the contract unless and until the results of plaintiff's psychological exam proved satisfactory to defendant. Defendant further contends that, as a matter of law, plaintiff cannot recover under the contract because it did in fact find those results unsatisfactory and terminated the contract for that reason. There are a number of problems with defendant's position, however, especially at this early stage of the litigation.

▬ First, the court agrees with plaintiff that the provision in the letter, if in fact it is a condition precedent to defendant's performance, is ambiguous with respect to the events required for its satisfaction. On its face, the provision requires only that plaintiff take a medical and psychological exam, not that he pass it, and that literal

construction of the provision is a reasonable one.[6] Therefore, because the provision is ambiguous, the court may consider extrinsic evidence of the parties' intent regarding the provision. *See Metropolitan Life Ins. Co. v. Strnad*, 255 Kan. 657, 662, 876 P.2d 1362 (1994); *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 452, 827 P.2d 24 (1992).[7] Dismissal at this stage, prior to discovery and in the absence of evidence for the court to consider, would thus be premature. In addition, in the event the provision represents a condition requiring satisfactory results from the exam, the parties have not yet addressed whether that satisfaction should be judged under an objective or subjective standard. *See* Restatement § 228 (if satisfaction is a condition, interpretation requiring an objectively reasonable satisfaction is favored); Farnsworth, *supra*, § 8.4 (courts will make reasonable satisfaction the condition if presented with a choice in which a forfeiture may result, although courts are willing to apply a subjective test of honest satisfaction if no benefit has been conferred).

▬ Second, even if the court were to accept defendant's position that its duty to perform under the contract was conditioned on its subjective approval of the results of the psychological exam, the court would still

**5.** If the court is not correct in its understanding of defendant's position and defendant is in fact advancing a different argument, such argument has not been sufficiently articulated to allow the court to dismiss the case on that basis.

**6.** Defendant's analogy to a drug test requirement is not entirely apt. Although one might safely assume that an employer would not want someone under the influence of drugs to work for it, an employer could quite reasonably accept an employee with medical or even psychological problems. A medical test might be intended merely to identify ways in which the employer would be required to accommodate a disability, for example, and not to judge the employee's fitness for employment. The psychological exam could reasonably have been intended, as plaintiff insists, for plaintiff's benefit and not for defendant's.

**7.** The parties dispute whether Alabama or Kansas law governs interpretation of the contract here. When exercising diversity jurisdiction, the court applies the forum state's choice of law rules to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477

(1941). Under Kansas law, the law of the place where the contract was made—that is, where the last act necessary for its formation was performed—governs the contract's interpretation. *Equifax Services, Inc. v. Hitz*, 1992 WL 163282, at *3 (10th Cir. July 9, 1992) (citing *Commercial Union Ins. v. John Massman Contracting*, 713 F.Supp. 1403, 1405 (D.Kan.1989)).

According to the facts set forth in plaintiff's complaint (which the court must credit for purposes of ruling on the motion to dismiss), defendant sent its written offer, plaintiff requested that changes be made in the offer, and then plaintiff accepted the offer by signing and returning the letter agreement. Thus, plaintiff's acceptance occurred in Kansas, and Kansas law would govern the contract.

The court notes, however, that its rulings here would be the same under Alabama law. *See Alfa Mutual Ins. Co. v. Nationwide Mutual Ins. Co.*, 684 So.2d 1295, 1300 (Ala.1996) (if a contract provision is ambiguous, parol evidence regarding the meaning of the provision may be considered, and the interpretation of the provision is for the trier of fact); *Lake Martin/Ala. Power Licensee Ass'n v. Alabama Power Co.*, 601 So.2d 942, 945 (Ala.1992) (same).

need to determine whether defendant exercised that judgment in good faith. *See* Restatement § 228 cmt. a; Farnsworth, *supra,* § 8.4; *Coppinger v. Republic Natural Gas Co.,* 171 F.2d 4, 6 (10th Cir.1948) (applying Kansas law).[8] The court can hardly make such a determination in the absence of evidence concerning the results of the evaluation and defendant's consideration of those results.

Moreover, defendant has not provided any evidence that the alleged condition did not in fact occur. Even if the court were to accept defendant's interpretation of the letter provision, defendant would still need to provide evidence, by affidavit or otherwise, that it was not in fact satisfied with the psychological evaluation and that it in fact terminated the contract for that reason. *See Barbara Oil Co. v. Patrick Petroleum Co.,* 1 Kan. App.2d 437, 440, `566 P.2d 389 (1977) ("Whether or not a contracting party's refusal to perform was because of a genuine and good faith claim that a condition precedent failed is a question for the jury.").[9]

For these reasons, the court denies defendant's motion to dismiss plaintiff's complaint for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss or for transfer of venue (Doc. 7) is denied.

**IT IS SO ORDERED.**

---

**8.** *See also Neumiller Farms, Inc. v. Cornett,* 368 So.2d 272, 274–75 (Ala.1979) (claim of dissatisfaction must be made in good faith); *Health Maintenance Group of Birmingham v. Rutledge,* 459 So.2d 889, 892 (Ala.Civ.App.1984) ("[I]t is a rule of law in satisfaction contracts that a promissor must exercise good faith in its determination of whether it is satisfied and will perform under the contract."), *review denied* (Nov. 21, 1984).

**9.** *See also Neumiller Farms,* 368 So.2d at 274–75 (claim of dissatisfaction may not be made to escape a bad bargain).