C. Wesley GREGORY, III, et al., Plaintiffs,

v.

POCONO GROW FERTILIZER CORPORATION, et al., Defendants.

No. 98–CV–6297L.

United States District Court, W.D. New York.

Jan. 26, 1999.

Paul J. Yesawich, III, Harris, Beach & Wilcox, Rochester, NY, for C. Wesley Gregory, III, C. Wesley Gregory, Jr., Donald E. Gordon.

Mark K. Broyles, Relin and Goldstein, Rochester, NY, for Pocono Grow Fertilizer Corporation, Bruce Ecke, Karen Ecke.

Mary Bittence, Baker & Hostetler, LLP, Cleveland, OH, Deborah Schaal, Rochester, NY, for Waste Stream Environmental, Inc.

Deborah Kall Schaal, Rochester, NY, Mary Bittence, Baker & Hostetler, LLP, Cleveland, OH, for U.S. Liquids, Inc., U.S. Liquids Northeast, Inc., Earth Blends, Inc.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiffs, C. Wesley Gregory, III ("Gregory"), C. Wesley Gregory, Jr. ("Junior"), Donald E. Gordon ("Gordon"), and Waste Stream Environmental, Inc. ("Waste Stream") (collectively "plaintiffs"), commenced this action against defendants, Pocono Grow Fertilizer Corporation ("Pocono Grow"), Bruce Ecke, and Karen Ecke (collectively "defendants"), for a declaratory judgment that no enforceable agreement exists between the parties. Pending before the Court is defendants' motion to dismiss plaintiffs' complaint for improper venue or, in the alternative, to transfer the action to the Middle District of Pennsylvania.

## FACTUAL BACKGROUND

Waste Stream is a New York corporation with its principal place of business in Weedsport, New York. Waste Stream recycles biosolids and sells products and services to the wastewater treatment industry in the Northeast United States. All the shares of Waste Stream were owned by Gregory, who resides in New York, Junior, who resides in Massachusetts, and Gordon, who resides in Maryland.

Pocono Grow is a Pennsylvania corporation with its principal place of business in Stroudsberg, Pennsylvania. Pocono Grow owns the permits and licenses necessary to construct and operate a waste treatment and recycling facility in East Stroudsberg, Pennsylvania. All the shares of Pocono Grow are owned by Bruce and Karen Ecke, who reside in Pennsylvania.

The undisputed facts on this motion establish that the parties began discussing a potential business relationship in February 1997. They conducted these negotiations between New York and Pennsylvania by telephone, facsimile, and mail. Additionally, one face-to-face meeting occurred between Gregory and the Eckes in Pennsylvania during the summer or fall of 1997.

On March 12, 1998, Gregory prepared and executed a letter of intent in New York, which proposed that Waste Stream become a 50% equity owner of Pocono Grow's stock and execute an operation and maintenance agreement for the facility. This letter of intent was delivered to Bruce Ecke in Pennsylvania, signed by him on March 13, 1998, and then returned to Gregory in New York.

In April 1998, Gregory informed Pocono Grow that all the stock of Waste Stream and Earth Blends, Inc., a company affiliated with Waste Stream, had been acquired by U.S. Liquids, Inc. and U.S. Liquids Northeast, Inc. Gregory assured Pocono Grow that this stock acquisition would not have any adverse effect on Waste Stream's commitment to the facility. Gregory also indicated that in the event U.S. Liquids declined to undertake the

project, the individual partners would assume Waste Stream's obligations.

On May 22, 1998, U.S. Liquids informed Pocono Grow that it did not intend to provide equity for the facility. Waste Stream's individual partners also decided that they did not want to pursue the transaction contemplated by the letter of intent.

On June 4, 1998, defendants advised the plaintiffs that they were prepared to commence litigation against Waste Stream and the individual plaintiffs for breach of the letter of intent. Plaintiffs immediately commenced this action for a declaratory judgment that there is no enforceable agreement between the parties. Defendants now move to dismiss plaintiffs' complaint for improper venue or, in the alternative, to transfer this action to the Middle District of Pennsylvania.

## DISCUSSION

### A. Defendants' Motion to Dismiss Pursuant to 28 U.S.C. § 1406(a)

Defendants move to dismiss plaintiffs' complaint for improper venue pursuant to 28 U.S.C. § 1406(a). Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Venue is this case is governed by 28 U.S.C. § 1391, which states:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

At the outset, I must determine whether subsections (a)(1) and (a)(2) provide two independent and alternative bases for venue or whether subsection (a)(2) can be used to establish venue only if subsection (a)(1) does not apply. One court has described the issue as whether the statute should be read conjunctively or disjunctively. *School Dist. of Philadelphia v. Pennsylvania Milk Mktg. Bd.,* 877 F.Supp. 245, 249 (E.D.Pa.1995).

There is some authority that the language of § 1391(a) is to be read disjunctively or hierarchically. In other words, when venue is proper in a particular district pursuant to subsection (a)(1) because all the defendants reside in the same state, venue does not lie elsewhere pursuant to subsection (a)(2). *See, e.g., Dashman v. Peter Letterese & Assocs., Inc.,* 999 F.Supp. 553 (S.D.N.Y.1998); *Cobra Partners L.P. v. Liegl,* 990 F.Supp. 332 (S.D.N.Y.1998); *Welch Foods, Inc. v. Packer,* 1994 WL 665399 (W.D.N.Y. Nov.22, 1994). These courts have essentially distilled this proposition from the history of the statute and from certain language found in the Supreme Court's decision in *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

Prior to 1966, the statute provided that venue would be proper "only in the judicial district where all plaintiffs or all defendants reside." Act of June 25, 1948, ch. 646, 62 Stat. 935. If there was no district where all the plaintiffs or all the defendants resided, then a "venue gap" resulted, and the case could not be brought in federal court. In 1966, Congress amended the statute to authorize venue "in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." Pub.L. No. 89–714, 80 Stat. 1111 (1966). In 1990, the statute was again amended to eliminate the plaintiffs' residence as a proper venue and to change the language from a district "in which the claim arose" to a district "in which a substantial part of the events or omissions giving rise to the claim occurred." Pub.L. No. 101–650, 104 Stat. 5114 (1990).

In *Leroy,* the Supreme Court stated that "the amendment of § 1391 to provide for venue where the claim arose was designed to

close the 'venue gaps' that existed under earlier versions of the statute in situations in which ... multiple defendants who contributed to a single injurious act, could not be sued jointly because they resided in different districts." *Id.* at 184 n. 17, 99 S.Ct. 2710. According to the Court, "[s]o long as the plain language of the statute does not open the severe type of 'venue gap' that the amendment giving plaintiffs the right to proceed in the district where the claim arose was designed to close, there is no reason to read it more broadly on behalf of plaintiffs." *Id.* at 184, 99 S.Ct. 2710.

District courts in this Circuit have relied on the history of the statute and the language from *Leroy* for the conclusion that suits may be brought in the district where a substantial part of the events occurred only if all the defendants do not reside in the same state. In my opinion, this conclusion is inconsistent with the plain language of the statute as well as with its legislative history.

The plain language of § 1391(a) indicates that venue is proper *either* in a district within the state where all the defendants reside *or* in a district in which a substantial part of the events or omissions giving rise to the claim occurred. Additionally, the legislative history of § 1391 states that "H.R.7382 amends subsections 1391(a) and 1391(b) of tile 28, United States Code, to *enlarge venue* authority so as to authorize any civil action to be brought in the judicial district where the claim arose. Under [subsection 1391(a) ], as amended, a civil action wherein jurisdiction is founded only on diversity of citizenship, unless otherwise provided by law, *may be brought in the judicial district in which the claim arose, as well as in the judicial districts where all plaintiffs or defendants reside.*" Committee Note to 1966 Amendment to Section 1391 (emphasis added), *reprinted in* 17 Moore's Federal Practice § 110 App. 05[2] (3d ed.1998). There is simply nothing in the language of the statute or its legislative history to suggest that the statute is to be read disjunctively or hierarchically. If Congress had, in fact, intended that result, it certainly could have drafted the language of the statute to that end.

I, therefore, adopt the reasoning of those courts that have held that the language of the statute—which clearly provides alternative bases for venue—controls. *See, e.g., Northern Kentucky Welfare Rights Ass'n v. Wilkinson,* 1991 WL 86267, at *3 (6th Cir. 1991) ("[T]he statute is phrased in the alternative."); *Market Transition Facility v. Twena,* 941 F.Supp. 462, 465 (D.N.J.1996) ("[T]he plain language of § 1391(a) indicates that venue in diversity cases is proper, regardless of circumstances, in either a district within the state where all defendants reside or in a district where a substantial part of the events or omissions giving rise to the claim occurred. There is nothing on the face of the statute to support [defendant's] interpretation that venue must be in a district where a defendant resides, when all defendants reside in the same state."); *School Dist. of Philadelphia,* 877 F.Supp. at 249 ("Accordingly, we find that even though venue would be appropriate in the Middle District based on (b)(1), it can also be proper here if the requirements of (b)(2) are met."); *Merchants Nat'l Bank v. Safrabank,* 776 F.Supp. 538, 541 (D.Kan.1991) ("The defendants' argument fails to give effect to the plain language of the statute.... We believe that the language of the statute must control and it provides for alternative bases of venue. Accordingly, we reject the defendants' argument that venue is improper here because all of the defendants reside in the Central District of California.").

I also note that this "alternative" approach has been approved by a leading commentator. According to Wright, Miller & Cooper, "[t]he provision for residential venue, in paragraph (1) ..., and the provision for transactional venue, in paragraph (2) ..., are in the alternative. Venue is proper if either one of those conditions is met." 15 Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure § 3804, at 16 (2d ed. Supp.1998). This same commentator stated further that it is "clearer than ever that [§ 1391(a)(2)] may be used in any case and is not limited to cases in which defendants could not be sued jointly because they resided in different districts." *Id.* § 3806, at 17 (2d ed. Supp.1998).

I find, therefore, that both (a)(1) and (a)(2) provide alternative bases for venue. Accordingly, although venue would be proper under (a)(1) in the Middle District of Pennsylvania because all the defendants reside there, venue also would be proper in this District if a substantial part of the events giving rise to plaintiffs' claim occurred here. I turn now to that inquiry.

The standard set forth in § 1391(a)(2) does not require that plaintiffs establish that the Western District of New York has "the most substantial contacts to the dispute; rather it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." *Neufeld v. Neufeld*, 910 F.Supp. 977, 986 (S.D.N.Y.1996) (quoting *Leucadia Nat'l Corp. v. FPL Group Capital, Inc.*, 1993 WL 464691, at *6 (S.D.N.Y. Nov.9, 1993)). As Professor Seigel explains, "[t]he fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too. Indeed, district A should not be disqualified even if it is shown that the activities in B were more substantial, or even the most substantial." 28 U.S.C.A. § 1391, David D. Seigel, Commentary on 1988 and 1990 Revisions of Section 1391, at 9.

Courts in this Circuit have held that the substantial activities' standard "may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." *Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 872 F.Supp. 1247, 1249 (S.D.N.Y.1995) (quoting *Sacody Technologies, Inc. v. Avant, Inc.*, 862 F.Supp. 1152, 1157 (S.D.N.Y.1994)).

I find that plaintiffs have alleged sufficient facts to establish that a substantial part of the events giving rise to their claim occurred within this District. There is no dispute that defendants' dealings with plaintiffs regarding the letter of intent occurred by telephone calls, facsimile transmissions, and correspondence between defendants in Pennsylvania and plaintiffs in New York. Further, Gregory prepared and executed the letter of intent in this District and transmit-

ted it to defendants in Pennsylvania. Defendants then transmitted the letter back to plaintiffs in this District. Additionally, any alleged breach of the letter of intent by plaintiffs occurred in this District.

Some important events did occur outside this District in the Middle District of Pennsylvania. For example, a meeting did take place there between Gregory and the Eckes concerning a facility to be constructed in Pennsylvania. "However, as referenced above, a plaintiff does not have to prove that his or her chosen venue is the best forum for the action; a plaintiff need only demonstrate that the choice is a permissible one." *Leucadia Nat'l Corp.*, 1993 WL 464691, at *6. I find that plaintiffs have done so. Accordingly, defendants' motion to dismiss plaintiffs' complaint for improper venue pursuant to § 1406(a) is denied.

### B. Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

Defendants also move, in the alternative, to transfer this action to the Middle District of Pennsylvania pursuant to § 1404(a). Section 1404(a) permits a district court to transfer an action that is otherwise properly venued to another district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."

A defendant moving for a change of venue must make out a strong case for transfer. *Cerasoli v. Xomed, Inc.*, 952 F.Supp. 152, 154 (W.D.N.Y.1997). "To prevail on the motion, defendant must make a 'clear showing' that the litigation in the proposed transferee district would be more convenient and would better serve the interests of justice." *Id.* at 155. I find that defendants have not made any showing in their motion papers why this case should be transferred. Accordingly, defendants' motion to transfer this action pursuant to § 1404 is denied.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for improper venue or, in the alternative, to transfer the action to the Mid-

dle District of Pennsylvania (Docket # 10) is denied.

IT IS SO ORDERED.