SOUTHERN COUNTY MUTUAL INSURANCE COMPANY and Trinity Universal Insurance Company, Appellants,

v.

David OCHOA, et al., Appellees.

No. 13–98–469–CV.

Court of Appeals of Texas, Corpus Christi.

March 2, 2000.

Opinion on Rehearing May 11, 2000.

Reagan M. Brown, Fulbright & Jaworski, Houston, Ben Taylor, Fulbright & Jaworski, Dallas, for Appellants.

Anthony F. Constant, Corpus Christi, Russell H. McMains, Law Offices of Russell H. McMains, Corpus Christi, for Appellees.

Before Chief Justice SEERDEN and Justices DORSEY and CHAVEZ.

## OPINION

Opinion by Chief Justice SEERDEN.

Southern County Mutual Insurance Co. and Trinity Universal Insurance Co. (collectively "Trinity") appeal from a final summary judgment against them for $40,000 policy limits on an automobile liability policy, plus the interest that has accrued since 1994 on a separate judgment against their insured, Ronnie D. Bleeker, for approximately $11,500,000 in excess of the policy limits. Trinity raises four issues on appeal, complaining that the trial court erred in failing to transfer venue, in failing to abate, and in granting summary judgment while fact issues remain concerning Trinity's defenses of res judicata and prior payment of the claim. We reverse and remand.

The lawsuit underlying the present appeal is only the latest of several actions arising out of a 1990 collision in Williamson County, Texas, in which Bleeker negligently killed or injured numerous members of the Villarreal and Ochoa families (collectively the "Ochoas"). At the time of the accident, Bleeker possessed an auto liability insurance policy from Southern County Insurance Company for the minimum required by law, $20,100 per person and $40,000 per accident. Trinity Universal reinsured Southern County's policies and handled their claims.

In February 1991, the Ochoas sued Bleeker in Hidalgo County district court for wrongful death and personal injuries resulting from his negligence in causing the collision. They obtained a judgment against him for $11,556,001 on January 3, 1994. Bleeker appealed, but did not supersede that judgment, which this Court generally affirmed.[1] In the meantime, the trial court had signed a March 1, 1994,

turnover order allowing the Ochoas to satisfy their judgment by pursuing Bleeker's claims against Trinity.

On December 8, 1992, Southern County filed an interpleader action in Williamson County, naming as defendants Bleeker, the Ochoas, and the Austin Hospital that had treated the injured family members. Southern County concurrently placed a check for its $40,000 policy limits into the registry of court. Although the interpleader action was dismissed for want of prosecution in February 1995, Trinity contends that the $40,000 is still in the registry of court.

On July 18, 1994, the Ochoas, pursuant to the turnover order and suing in Bleeker's name, filed a *Stowers*[2] action against Trinity for the amount of the judgment the Ochoas recovered against Bleeker. The trial court granted judgment for the Ochoas, but the Texas Supreme Court ultimately reversed and rendered judgment that they take nothing.[3]

On December 10, 1997, Trinity filed a declaratory judgment action in Williamson County district court, asking for a declaration of its obligations to Bleeker and the Ochoas under the insurance policy. That lawsuit remains pending in Williamson County.

Finally, on December 29, 1997, the Ochoas filed in Hidalgo County district court the present lawsuit against Trinity for the policy limits and for interest on the prior judgment against Bleeker under a provision of the insurance policy allowing the insured to recover the interest accruing until Trinity pays the policy limits. Trinity moved for transfer of venue to Williamson County, and alternately pled for abatement based on dominant jurisdiction of its declaratory judgment action in

---

1. *See Bleeker v. Villarreal,* 941 S.W.2d 163 (Tex.App.—Corpus Christi 1996, writ dism'd by agr.).

2. *G.A. Stowers Furniture Co. v. American Indemnity Co.,* 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved).

3. *Trinity Universal Ins. Co. v. Bleeker,* 966 S.W.2d 489 (Tex.1998).

that county. The Ochoas moved for summary judgment on their claims, and Trinity defended against summary judgment on the grounds that: (1) the present suit is barred by *res judicata* and the claims are barred by collateral estoppel, based on the prior take-nothing judgment on their claims against Trinity; (2) Trinity had already paid policy limits by tendering the funds into the registry of the Williamson County district court; and (3) Bleeker had breached his own obligations by failing to cooperate with Trinity in connection with his settlement of the prior action against him. The trial court heard the motions together, denied transfer or abatement, and granted summary judgment for the Ochoas.

### Venue

By its first issue, Trinity complains that the trial court erred in denying its motion to transfer venue to Williamson County.

█ An appellate court is obliged to conduct an independent review of the entire record to determine whether venue was proper in the ultimate county of suit, and this review should be conducted like any other review of a trial court's fact findings and legal rulings, except that the evidence need not be reviewed for factual sufficiency. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex.1993). However, the venue facts in the present case are generally uncontested, leaving only the legal issue of whether venue was proper in Hidalgo County.

Trinity's principal place of business was in Dallas County, and the collision occurred in Williamson County, where the insurance policy was also issued to Bleeker. However, the Ochoas sought to establish venue in Hidalgo County solely based on the fact that they obtained their judgment against Bleeker in a Hidalgo County district court.

█ The present permissive venue statute generally allows the plaintiff to bring suit in the county of the defendant's residence or principal office, or "in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred." TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a)(1) (Vernon Supp.1999). This statute is a revision of the old permissive venue statute which allowed suit "in the county in which all or part of the cause of action accrued or in the county of defendant's residence if defendant is a natural person." TEX. CIV. PRAC. & REM.CODE ANN. § 15.001 (repealed 1995).

The changed language of section 15.002(a)(1) appears to have been patterned after a similar 1990 federal statute providing for venue in diversity cases in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2).

█ When the Texas legislature adopts a statute with wording substantially similar to a federal statute, we presume, absent some indication to the contrary, that the legislature intended to adopt the construction placed on that wording by the federal courts, and we look to federal cases as a guide to interpreting the state statute. *Blackmon v. Hansen*, 140 Tex. 536, 169 S.W.2d 962, 964–65 (1943); *City of Garland v. Dallas Morning News*, 969 S.W.2d 548, 556–57 (Tex.App.—Dallas 1998, pet. granted); *Summers v. WellTech, Inc.*, 935 S.W.2d 228, 232–33 (Tex.App.—Houston [1st Dist.] 1996, no writ); *Sharifi v. Young Bros., Inc.*, 835 S.W.2d 221, 223 (Tex. App.—Waco 1992, writ denied).

Accordingly, since few Texas cases have explored the meaning of the revision to the Texas permissive venue statute, we look to federal cases construing section 1391(a)(2), as well as Texas cases under the prior venue statute where appropriate.

Trinity argues on appeal that the present statute restricts the venue choice under section 15.002(a)(1) to only one county in which all or the most substantial part of the events giving rise to the lawsuit occurred. Trinity contends that the statute's

provision for venue in "the" county in which all or a substantial part of the events or omissions giving rise to the claim occurred implies a single county of proper venue under this subsection. While grammar may be on Trinity's side, history is not.

Although substantial changes were made by the revision, both the old and new venue statutes retain the same exact language allowing permissive venue "in *the* county" of the defendant's residence or where the "cause of action accrued"/"events or omissions giving rise to the claim occurred." *Compare* TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a)(1) & (2) (Vernon Supp.1999) *with* TEX. CIV. PRAC. & REM.CODE ANN. § 15.001 (repealed 1995). Yet, under the old statute, there was no question that the defendant might have several residences for venue purposes, and that parts of the cause of action might accrue in different counties. *See Wilson v. Texas Parks and Wildlife Dept.,* 886 S.W.2d 259, 260 (Tex.1994); *McIntosh v. Copeland,* 894 S.W.2d 60, 65 (Tex.App.— Austin 1995, writ denied) (venue may be proper in many counties under general, mandatory, or permissive venue rules); *see also GeoChem Tech Corp. v. Verseckes,* 962 S.W.2d 541, 543 (Tex.1998); *Munson v. Milton,* 948 S.W.2d 813, 817 (Tex.App.— San Antonio 1997, writ denied); *Howell v. Mauzy,* 899 S.W.2d 690, 697 (Tex.App.— Austin 1994, writ denied) (residence in two or more counties); *see also Legal Security Life Insurance Co. v. Trevino,* 605 S.W.2d 857 (Tex.1980); *Time Housing Corp. v. Nunez,* 671 S.W.2d 694, 697 (Tex.App.— San Antonio 1984, no writ) (single transaction that serves as the basis of the suit is sufficient to sustain venue).

■ When a statute, or some portion thereof, is re-enacted without material change, it is presumed that the legislature knew and adopted the interpretation placed on the original act and intended the new enactment to receive the same construction. *Ector County v. Stringer,* 843 S.W.2d 477, 479 n. 4 (Tex.1992); *Blount v.*

*Dutton,* 967 S.W.2d 955, 957 (Tex.App.— Beaumont 1998, no pet.); *see also The Cadle Co. v. Butler,* 951 S.W.2d 901, 908 (Tex.App.—Corpus Christi 1997, no writ).

■ In addition, one provision of a statute will not be given a meaning out of harmony or inconsistent with other provisions, even though it might be susceptible to such construction if standing alone. *Barr v. Bernhard,* 562 S.W.2d 844 (Tex. 1978); *Price v. State,* 840 S.W.2d 694, 696 (Tex.App.—Corpus Christi 1992, pet. ref'd); *City of West Lake Hills v. Westwood Legal Defense Fund,* 598 S.W.2d 681, 684 (Tex.Civ.App.—Waco 1980, no writ); *see also Texas Workers' Compensation Ins. Fund v. Alcorta,* 989 S.W.2d 849, 852 (Tex.App.—San Antonio 1999, no pet. h.). Specifically, in absence of language clearly indicating a contrary intent, a word or phrase used in different parts of a statute is presumed to have the same meaning throughout, and where the meaning in one instance is clear, this meaning will be attached in all other instances. *Brown v. Darden,* 121 Tex. 495, 50 S.W.2d 261, 263 (1932); *Southwest Properties, L.P. v. Lite–Dec of Texas, Inc.,* 989 S.W.2d 69, 71 (Tex. App.—San Antonio 1998, pet. denied); *see also Boriack v. Boriack,* 541 S.W.2d 237, 240 (Tex.Civ.App.—Corpus Christi 1976, writ dism'd w.o.j.).

In the present case, the statute has consistently retained its terminology of "in *the* county" both over the course of revision and throughout the separate subsections of the present statute. Accordingly, we conclude that prior interpretations broadly allowing more than one county to meet the specific venue requirements of any particular subsection should apply as well throughout the present statute. Nor is there any indication in the present statute that a "substantial part of the events or omissions" may not occur in more than one county.

In addition, if we look to the federal statute, the 1990 amendment revising the provisions for claim-centered venue was

considered to be an expansion of venue choices.[4] Under the present section 1391(a)(2), there may be more than one district in which a substantial part of the events giving rise to a claim occurred, allowing a choice of more than one proper venue for a certain cause of action. *Woodke v. Dahm*, 70 F.3d 983, 985 (8 th Cir.1995); *Seariver Maritime Financial Holdings, Inc. v. Pena*, 952 F.Supp. 455, 458–59 (S.D.Tex.1996). Thus, a federal court is not obliged to determine the "best" venue for a cause of action pending before it, and, even if another district's contacts with the controversy are more substantial than the district in which suit is filed, the court need determine only whether substantial events occurred in the chosen district. *Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1281 (8 th Cir.1994); *Seariver Maritime Financial Holdings, Inc.*, 952 F.Supp. at 458–59; *see also Gregory v. Pocono Grow Fertilizer Corp.*, 35 F.Supp.2d 295, 299 (W.D.N.Y.1999) (citing David D. Seigel, Commentary on the 1998 and 1990 Revisions of Section 1391, at 9).

◼ Assuming that several different counties may be proper counties under the present claim-centered provision of the Texas permissive venue statute, we must determine whether the judgment against Bleeker in Hidalgo County amounts to a "substantial part of the events" giving rise to the present claim against Trinity under the indemnity provisions of its insurance policy.[5]

If we look to the federal statute for guidance, in determining whether a substantial part of the events occurred in the chosen district, the federal courts consider the totality of the events leading up to the plaintiff's claim. *Etienne v. Wolverine Tube, Inc.*, 12 F.Supp.2d 1173, 1181 (D.Kan.1998). Specifically, in determining whether venue is proper for a breach of contract action, federal courts consider "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Id.* (quoting *PI, Inc. v. Quality Products, Inc.*, 907 F.Supp. 752 (S.D.N.Y.1995)).

Similarly, under the prior Texas venue statute, a cause of action consisted of the factual propositions which established plaintiff's primary right, and defendant's act or omission which violated such right. *Lubbock Manufacturing Co. v. Sames*, 598 S.W.2d 234 (Tex.1980); *Stiba v. Bowers*, 756 S.W.2d 835, 837–38 (Tex.App.—Corpus Christi 1988, no writ). Such factual propositions were described in law as being essential as opposed to merely evidentiary. *Stiba*, 756 S.W.2d at 837–38; *Krchnak v. Fulton*, 759 S.W.2d 524, 526 (Tex.App.—Amarillo 1988, writ denied); *Houston Pipe Line Co. v. Oxy Petroleum, Inc.*, 597 S.W.2d 57, 60 (Tex.Civ.App.—Corpus Christi 1980, writ dism'd w.o.j.). Specifically with regard to contract claims, the formation of the contract, its performance and its breach were all essential parts of a cause of action for breach of contract, and the cause of action accrued in any county where one of these events occurred. *See*

---

**4.** Before the 1990 amendment, the federal statute provided that venue lay in the district "in which the claim arose," 28 U.S.C. § 1391(a) (1988), and the courts considered the weight of the contacts to determine the best venue for the action. *Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1280–81 (8 th Cir.1994) (citing *Missouri Housing Development Comm'n v. Brice*, 919 F.2d 1306, 1312 (8 th Cir.1990)). The Supreme Court acknowledged that only in an unusual case would the plaintiff have occasion to choose between two or more districts with approximately equal plausibility as the locus of the claim for purposes of venue. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct.

2710, 2717, 61 L.Ed.2d 464 (1979). As Professor Seigel stated in his commentary to the amendment of the venue statute, "[t]he 'claim arose' language was usually held to demand that one place, and one only, be pinpointed as the place where the claim 'arose.' " David D. Seigel, Changes in Federal Jurisdiction and Practice Under the New (Dec. 1, 1990) Judicial Improvements Act, 133 F.R.D. 61, 71.

**5.** That policy specifically required Trinity to "pay damages for bodily injury or property damage for which [Bleeker] becomes legally responsible because of an auto accident."

*Phillio v. Blythe,* 12 Tex. 124, 127–28 (1854); *Krchnak,* 759 S.W.2d at 526; *Houston Pipe Line Co.,* 597 S.W.2d at 60.

The present claim is for breach of an insurance contract obligating Trinity to indemnify Bleeker and, by extension, to pay his judgment creditors, the Ochoas. The insurance contract was formed in Williamson County, where the collision also occurred. However, Trinity's obligation to perform by paying the claim was contingent upon liability first having been established against its insured for negligent conduct within the scope of the policy.

■ An insurer is not obligated to pay a liability claim until it's insured has been adjudicated to be legally responsible. *Heyden Newport Chemical Corp. v. Southern General Ins. Co.,* 387 S.W.2d 22, 25 (Tex.1965); *Gracida v. Tagle,* 946 S.W.2d 504, 507 (Tex.App.—Corpus Christi 1997, orig. proceeding); *see also Texas Property and Cas. Ins. Guar. Ass'n v. Boy Scouts of America,* 947 S.W.2d 682, 691 (Tex.App.—Austin 1997, no writ) (insurer becomes legally obligated when the insured's legal obligation becomes fixed by judgment or by settlement contract). The establishment of such liability is, therefore, a condition precedent to the insurer's duty to pay. In the present case, Trinity's duty to pay arose when the Ochoas recovered a judgment against Bleeker in Hidalgo County.

Though the concept of a condition precedent does not clearly fit into the categories of formation, performance, or breach of the underlying contract, it does amount to an essential fact upon which the claimant's right to performance (i.e., payment of the claim) is based. Therefore, it logically forms a substantial part of the events giving rise to the claim.

Under the old Texas venue statute, a judgment against the insured has been held to form a part of the cause of action against his liability insurer. In *Birkes v. Lloyds Cas. Insurer,* 209 S.W.2d 438 (Tex. Civ.App.—Austin 1948, no writ), the plaintiff recovered a judgment in Fayette County, Texas, against Bartels, who had liability insurance from Lloyds Casualty Insurer. For purposes of venue, a part of the plaintiff's subsequent cause of action against Lloyds on the liability policy arose in the Fayette County, as the place where the prior judgment had been recovered against Bartels. *Id.* at 440.

When, under similar circumstances, a judgment in one case forms the basis for the cause of action in a second case, the prior Texas venue statute has provided venue for the second case in the county where the judgment in the first was recovered. *See Bonham State Bank v. Beadle,* 907 S.W.2d 465, 471 (Tex.1995) (cause of action to off-set a judgment against one party as against a separate judgment against the opposing party may be brought in the county in which either judgment was rendered); *Brazos Elec. Power Co-op., Inc. v. McCullough,* 599 S.W.2d 357, 361 (Tex.Civ.App.—Waco 1980, no writ) (plaintiff's cause of action for trespass depended upon a showing that the defendant exceeded the bounds of an easement, which had been established across the plaintiff's land by a prior judgment); *cf. Stiba,* 756 S.W.2d at 838 (the act of probating a will in the court of a particular county is not a part of the later cause of action for construction of that will, but is merely a necessary evidentiary fact in relation to the action for construction). In *Bonham State Bank,* the Texas Supreme Court stated that "[t]he only element of a cause of action for offsetting two or more mutual judgments is the rendition of those judgments. Accordingly, a cause of action or a part thereof accrues in a county where either of the judgments was rendered...." *Bonham State Bank,* 907 S.W.2d at 471.

In addition, other states and commentators have generally concluded that venue in a suit against a liability insurer is proper in the county in which judgment was recovered against the insured. *See Hardenburgh v. Hardenburgh,* 115 Mont. 469, 146 P.2d 151, 160 (1944); *Malmgren v.*

*Southwestern Automobile Ins. Co.*, 201 Cal. 29, 255 P. 512, 513 (1927); 18 Couch on Insurance 2d § 73:167 (1983) ("cause of action on an automobile liability policy may be laid in the county in which the injury occurred and in which judgment was taken against the insured").

We conclude that, under the present Texas venue statute, the judgment against Bleeker in Hidalgo County was a substantial part of the events giving rise to the Ochoas' action against Trinity on the indemnity policy and thus establishes venue in Hidalgo County. We overrule Trinity's first issue on appeal.

## Dominant Jurisdiction

■ By its second issue, Trinity complains that the trial court erred in refusing to abate the present lawsuit based on dominant jurisdiction of a separate lawsuit in Williamson County.

On January 30, 1998, Trinity filed an unverified plea in abatement, arguing that Williamson County had dominant jurisdiction. Trinity attached as an exhibit its Original Petition for Declaratory Relief filed on December 10, 1997, in Williamson County against Bleeker, asking for a declaration concerning its obligations to Bleeker under the insurance policy in question. Trinity also attached a copy of its amended petition filed on December 19, 1997, joining the Ochoas as defendants. That amended petition stated with regard to each defendant that no citation was requested at the time of filing.

The Ochoas responded to the plea in abatement, but did not object to the lack of verification. They did complain that Trinity had not requested service of process on the Williamson County lawsuit and provided the affidavit of a Williamson County Deputy District Clerk, who stated that no request for issuance of citation for the Ochoas had not been made until June 10, 1998. The Ochoas argued that Trinity did not thereby diligently pursue the Williamson County lawsuit and was not entitled to abatement of the present action. The trial court heard and denied the plea based on argument of counsel.

■ The Ochoas contend that Trinity has waived any error by its failure to verify the plea in abatement.

■ Texas Rule of Civil Procedure 93(3) requires verification by affidavit of a plea "[t]hat there is another suit pending in this State between the same parties involving the same claim." The failure to verify a pleading required to be verified under Rule 93 generally waives any complaint that the trial court ruled adversely to the plea. *Werner v. Colwell*, 909 S.W.2d 866, 870 (Tex.1995); *Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex.1988) (capacity in which a party was sued); *see also Overall v. Southwestern Bell Yellow Pages, Inc.*, 869 S.W.2d 629, 632 (Tex.App.— Houston [14th Dist.] 1994, no writ) (contesting genuineness of signature); *Murphy v. Canion*, 797 S.W.2d 944, 949 (Tex. App.—Houston [14th Dist.] 1990, no writ) and *Champion v. Wright*, 740 S.W.2d 848, 851–52 (Tex.App.—San Antonio 1987, writ denied) (failure of consideration); *Gonzalez v. Nielson*, 770 S.W.2d 99, 102 (Tex. App.—Corpus Christi 1989, writ denied) (denial of execution of an instrument).

Trinity responds that it effectively verified the plea in abatement by way of its January 30, 1998, Original Answer, which did specifically verify the clause of that answer alleging that "there is another suit pending in this state between the same parties involving the same claim. Prior to the filing of this lawsuit, defendants filed suit in Cause No. 97–507–C368, in the 368 th Judicial District Court of Williamson County, Texas, naming as parties-defendants the plaintiffs in this lawsuit." Trinity also points to an affidavit filed in connection with its motion to transfer venue that also verifies the filing of the Williamson County suit.

While the better practice would have been to include the verification in the plea in abatement, we conclude that it was ade-

quately presented by way of the concurrently filed answer and motion to transfer. When such verification is filed at the same time as the pleading to which it relates, it would be overly technical to deny it any weight simply because it was not physically attached to the proper pleading. *See Hays v. Kessler,* 564 S.W.2d 496, 497–98 (Tex.Civ.App.—Dallas 1978, no writ) (affidavits filed concurrently with answer and referred to in supporting brief). We conclude that Trinity properly raised and verified its claim of dominant jurisdiction.

■ When suit would be proper in more than one county, the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other courts. *Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 248 (Tex.1988); *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974). However, there are three exceptions to this rule: (1) conduct by a party that estops him from asserting prior active jurisdiction; (2) lack of persons to be joined if feasible, or the power to bring them before the court; and (3) lack of intent to prosecute the first lawsuit. *Wyatt,* 760 S.W.2d at 248; *Curtis,* 511 S.W.2d at 267.

In the present case, although the Williamson County suit was filed first, the Ochoas argue that a significant delay of issuance of citation and service of process showed Trinity's lack of intent to prosecute that action.

■ A plea in abatement is properly overruled where the party asserting dominant jurisdiction shows its lack of intent to prosecute the first lawsuit by an unreasonable delay in procuring a citation. *Curtis,* 511 S.W.2d at 267; *Reed v. Reed,* 158 Tex. 298, 311 S.W.2d 628 (1958).[6] The required standard of diligence in procuring citation and service is "that diligence to procure service which an ordinarily prudent person would have used under the same or similar circumstances." *Gonzalez*

*v. Phoenix Frozen Foods, Inc.,* 884 S.W.2d 587, 590 (Tex.App.—Corpus Christi 1994, no writ); *Newman v. Broadus,* 847 S.W.2d 249, 251 (Tex.App.—Corpus Christi 1992, no writ); *Hansler v. Mainka,* 807 S.W.2d 3, 5 (Tex.App.—Corpus Christi 1991, no writ) (quoting *Reynolds v. Alcorn,* 601 S.W.2d 785, 788 (Tex.Civ.App.—Amarillo 1980, no writ)). The existence of diligence is generally a question of fact, but if no excuse is offered for a long delay, or if the time lapses and the plaintiff's acts conclusively negate diligence, a lack of diligence will be found as a matter of law. *Gonzalez,* 884 S.W.2d at 590; *Newman,* 847 S.W.2d at 251; *Hansler,* 807 S.W.2d at 5.

The courts have consistently held that unexplained delays of five and six months in procuring issuance and service of citation constitute a lack of due diligence. as a matter of law. *See Weaver v. E–Z Mart Stores, Inc.,* 942 S.W.2d 167, 169 (Tex. App.—Texarkana 1997, no writ); *Dawson–Austin v. Austin,* 920 S.W.2d 776, 785–86 (Tex.App.—Dallas 1996), *rev'd on other grounds,* 968 S.W.2d 319 (Tex.1998); *Gonzalez,* 884 S.W.2d at 590; *Cooke v. Maxam Tool and Supply, Inc.,* 854 S.W.2d 136, 140 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *Butler v. Ross,* 836 S.W.2d 833, 836 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Hansler,* 807 S.W.2d at 5; *but see Curtis,* 511 S.W.2d at 268 (delay of twenty-six days between filing suit and procuring issuance of citation did not, as a matter of law, show a lack of diligence).

In the present case, although Bleeker was served on February 4, 1998, citation was not requested or service completed on any of the Ochoas before July 1998, some seven months after the Williamson County suit was filed. At the hearing on its plea in abatement, Trinity's counsel argued that the Texas Supreme Court had, in connection with a separate mandamus proceeding, issued an order staying both the Hidalgo County lawsuit and the Williamson

---

**6.** *Reed* suggested that diligence for purposes of dominant jurisdiction is measured by the same standard as diligence in cases involving

tolling of the statute of limitations. *Reed,* 311 S.W.2d at 630.

County lawsuit from February 11, 1998, until the stay was lifted on April 17, 1998, thus excusing it from pursuing service during that time period. However, Trinity did not present the trial court with a copy of that order or otherwise make it available at the hearing. Trinity's counsel also alleged that he was in the process of investigating the Ochoas' whereabouts as late as January 30, 1998, but did not present any evidence concerning his specific attempts to discover their addresses or why he could not have easily obtained that information from their counsel in the present cause of action. Finally, Trinity argued that the Ochoas had judicially admitted that it was diligently pursuing the Williamson County suit by a reference in their responsive pleading in the Texas Supreme Court that Trinity was "not about to dismiss [that lawsuit]."

We hold that the trial court did not abuse its discretion in determining that Trinity failed to use due diligence in serving the Ochoas. Moreover, Trinity could not rely on an alleged stay order of the Texas Supreme Court that it did not make available to the trial court or to this Court.

■ We cannot take judicial notice of the orders of another court in another case unless we are supplied with proof of those orders. *Culver v. Pickens*, 142 Tex. 87, 176 S.W.2d 167, 171 (1944); *Bhalli v. Methodist Hosp.*, 896 S.W.2d 207, 210 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *National County Mut. Fire Ins. Co. v. Hood*, 693 S.W.2d 638, 639 (Tex. App.—Houston [14th Dist.] 1985, no writ); *see also Office of Public Utility Counsel v. Public Utility Comm'n of Texas*, 878 S.W.2d 598, 600 (Tex.1994); *Surgitek, Inc. v. Adams*, 955 S.W.2d 884, 889 n. 4 (Tex. App.—Corpus Christi 1997, pet. dism'd by agr.) (court is required to take judicial notice of proceeding in a separate action when properly requested to *and supplied with the necessary information* ). In the present case, Trinity has failed to direct this Court to any portion of the record in which a copy of the Texas Supreme Court's order may be found, nor was that order described in any detail at the hearing.

Finally, any admission by the Ochoas that Trinity was not about to dismiss the Williamson County lawsuit has no bearing on Trinity's diligence in pursuing service or its intent to prosecute that action to judgment.

Accordingly, the trial court properly denied the plea in abatement based on unexcused delay in service, showing Trinity's lack of intent to prosecute the lawsuit in Williamson County. We overrule Trinity's second issue on appeal.

### Summary Judgment

By its third and fourth issues, Trinity complains that the trial court erred in granting summary judgment.

The Ochoas moved for summary judgment on their claims against Trinity for breach of the insurance policy. The Ochoas argued that they established their entitlement to directly sue Trinity as third-party beneficiaries of Bleeker's liability insurance policy, under the holding in *Dairyland County Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 775 (Tex.1983). They claim that their judgment against Bleeker and the terms of the insurance policy conclusively established their claim against Trinity.

Trinity responded to the motion for summary judgment, arguing the affirmative defenses of res judicata, collateral estoppel, and prior payment, as well as challenging the Ochoas' right to recover on the contract after Bleeker entered an unauthorized settlement.

A party moving for summary judgment has the burden of establishing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). In deciding whether disputed material fact issues preclude summary judgment, evidence favorable to the nonmovant

is taken as true; every reasonable inference is indulged in favor of the nonmovant and any doubt is resolved in his favor. *Id.* at 548–49.

However, if the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678–9 (Tex.1979); *Neuhaus v. Richards,* 846 S.W.2d 70, 74 (Tex.App.—Corpus Christi 1992), *judgment set aside without reference to merits to effect settlement agreement,* 871 S.W.2d 182 (Tex.1994).

### Res Judicata

Res judicata precludes relitigation of claims that have been finally adjudicated or that arise out of the same subject matter as a prior action and could have been litigated in the prior action. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex.1992); *In re Estate of Ayala,* 986 S.W.2d 724, 726 (Tex.App.—Corpus Christi 1999, no writ). It requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996); *Ayala,* 986 S.W.2d at 726.

In the present case, Trinity raised the prior *Stowers* action as a defense to the present lawsuit. In July 1994, suit was filed in Bleeker's name against Trinity on a *Stowers* claim for negligently failing to settle the earlier claims made by the Ochoas that resulted in the January 1994 judgment against Bleeker for $11,500,000. Bleeker also sued for statutory causes of action under the DTPA and Texas Insurance Code based on the same conduct by

Trinity. The trial court granted judgment against Trinity for $77,000,000. This Court affirmed the *Stowers* claim, but the Texas Supreme Court ultimately reversed and rendered judgment that Bleeker take nothing. *Trinity Universal Ins. Co. v. Bleeker,* 944 S.W.2d 672, (Tex.App.—Corpus Christi 1997), *reversed,* 966 S.W.2d 489 (Tex.1998).

There is no dispute that the first element concerning a prior final judgment has been met in the present case. However, the Ochoas contend both that they were not parties to that judgment, and that it did not involve the same claims as the present contract action.

With regard to identity of parties, although the prior action was prosecuted in Bleeker's name, the Ochoas were the real parties in interest. After the Ochoas had recovered the original judgment against Bleeker, the trial court in that action signed a March 1, 1994, turnover order "that all causes of action which Ronnie Dale Bleeker may have against [Trinity] ... are hereby assigned to the Plaintiffs in proportion [to their interest in the judgment against Bleeker].... It is ordered that Plaintiffs are entitled to proceed to prosecute and settle all such assigned claims in the name of Ronnie Dale Bleeker." The Ochoas admit that, by virtue of this turnover order, they controlled the July 1994 lawsuit against Trinity.

Courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment which may be rendered. *Ex parte Foster,* 144 Tex. 65, 188 S.W.2d 382 (1945); *American Indemnity Co. v. Fellbaum,* 114 Tex. 127, 263 S.W. 908, 910 (1924); *Elliott v. Hamilton,* 767 S.W.2d 262, 263 (Tex.App.—Beaumont 1989, writ denied); *Credit Bureau of Laredo, Inc. v. State,* 515 S.W.2d 706, 709 (Tex.Civ.App.— San Antonio 1974), *aff'd,* 530 S.W.2d 288 (Tex.1975); *Ellison v. McGlaun,* 482 S.W.2d 304, 310 (Tex.Civ.App.—Amarillo

1972, writ ref'd n.r.e.); *Bragdon v. Wright,* 142 S.W.2d 703, 705 (Tex.Civ.App.—Texarkana 1940, writ dism'd w.o.j.).

■ In the present case, the turnover order effected an assignment to the Ochoas of all the claims that Bleeker had against Trinity. An assignee may file suit and recover either in his own name or in the name of the assignor. *Texas Machinery & Equipment Co. v. Gordon Knox Oil & Exploration Co.,* 442 S.W.2d 315, 317 (Tex.1969); *Graco Robotics, Inc. v. Oaklawn Bank,* 914 S.W.2d 633, 639 (Tex. App.—Texarkana 1995, writ dism'd w.o.j.); *Hartnett v. Hampton Inns, Inc.,* 870 S.W.2d 162, 167 (Tex.App.—San Antonio 1993, writ denied).

■ Nevertheless, whatever name he chooses to sue under, when a cause of action is assigned or transferred, the assignee becomes the real party in interest with the authority to prosecute the suit to judgment. *Hunter v. B.E. Porter, Inc.,* 81 S.W.2d 774, 774 (Tex.Civ.App.—Dallas 1935, no writ). Accordingly, the assignee being the real party in interest and in control of the lawsuit, he is also in privity with the nominal party such that the judgment therein will bind him as a party. *See HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 890 (Tex.1998); *Amstadt,* 919 S.W.2d at 652–53; *Ayala,* 986 S.W.2d at 727 (authority to control the lawsuit is one means by which an unnamed party may be considered to be in privity with the nominal party).

The Ochoas point to *Gracia v. RC Cola–7–Up Bottling Co.,* 667 S.W.2d 517 (Tex. 1984), in which the Texas Supreme Court held that the named adult plaintiff who brought a lawsuit as next friend of her minor daughter was not bound individually by an adverse judgment. *Id.* at 519. The court reasoned that, when a party appears in a representative capacity to protect another's interest, the represented party is the real party in interest and an adverse judgment in that action does not bind the nominal party from later bringing suit in her individual capacity to assert her own interest. *Id.* at 519 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 36(2) (1982) ("A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.")). However, in the present case, the Ochoas, as assignees of the claims against Trinity, sued for their own benefit and not as representatives of Bleeker.

■ Neither is the present case governed by *Dairyland,* 650 S.W.2d at 774. In that case, the Texas Supreme Court held that the insured and the injured party are not in privity with regard to a declaratory judgment action brought by the insurer to determine coverage rights *prior to* the adjudication of the underlying claim by the injured party against the insured. *Id.* at 774. The court concluded that the statutory requirement in Texas for all drivers to carry liability insurance implies that all potential claimants for damages resulting from automobile accidents are intended as beneficiaries. *Id.* at 774–76; *Wright v. Rodney D. Young Ins. Agency,* 905 S.W.2d 293, 295 (Tex.App.—Fort Worth 1995, no writ). Accordingly, the injured party is a third-party beneficiary of the liability insurance contract and has rights which may not be precluded by the prior action solely between the insured and the insurer. *Dairyland,* 650 S.W.2d at 774–76.

However, where as in the present case the insured's own liability has been finally determined and judgment rendered against him, and where the injured party has thereafter acquired and actively prosecuted an action against the insurer, *Dairyland* simply does not apply to shield the injured party from the consequences of his own unsuccessful lawsuit.

■ We conclude that the Ochoas were bound by the prior judgment as the real parties in interest in their lawsuit against Trinity. We now turn to the scope of that

judgment for purposes of res judicata, or claim preclusion.

■ Res judicata precludes those claims that arise out of the same subject matter of a previous suit and which, through the exercise of diligence, could have been litigated in the prior suit. *Getty Oil Co. v. Insurance Co. of North America,* 845 S.W.2d 794, 798–99 (Tex.1992); *Barr,* 837 S.W.2d at 631; *Henry v. Chubb Lloyds Ins. Co.,* 895 S.W.2d 810, 812–13 (Tex.App.—Corpus Christi 1995, writ denied). It thus prevents splitting a cause of action. *Barr,* 837 S.W.2d at 629; *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex. 1985); *Henry,* 895 S.W.2d at 812–13. The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Barr,* 837 S.W.2d at 629; *Henry,* 895 S.W.2d at 812–13; Zollie Steakley & Weldon U. Howell, Jr., *Ruminations on Res Judicata,* 28 Sw.L.J. 355, 358–59 (1974).

■ This approach adopted by *Barr* and its progeny is known as the "transactional approach" to res judicata, which may be found as well in the Restatement (Second) of Judgments § 24 (1980). *See Getty Oil Co.,* 845 S.W.2d at 798–99; *Barr,* 837 S.W.2d at 630–31. The determination of whether a given claim is precluded is to be made pragmatically, and the factors listed in Restatement section 24 to be considered in determining whether facts constitute a single "transaction" are: their relatedness in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage. *Getty Oil Co.,* 845 S.W.2d at 798–99; *Barr,* 837 S.W.2d at 630–31.

■ A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation. *Amstadt,* 919 S.W.2d at 653; *Barr,* 837 S.W.2d at 630–31. It requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action. Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit. *Barr,* 837 S.W.2d at 630–31; *Henry,* 895 S.W.2d at 812–13. Moreover, it does not matter that the two actions accrued at different times so long as the plaintiff, through the exercise of diligence, could have brought them both in the same lawsuit. *Getty Oil Co.,* 845 S.W.2d at 798–99.

In the present case, we must determine whether the present action on the insurance contract arose out of the same subject matter as, and through the exercise of diligence could have been litigated in, the prior *Stowers* action for Trinity's allegedly negligent failure to settle for policy limits. We first examine the nature of a *Stowers* claim.

■ Under Texas law, an insurer may be liable for negligently failing to settle within policy limits claims made against its insured. *Texas Farmers Ins. Co. v. Soriano,* 881 S.W.2d 312, 314 (Tex.1994); *G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544, 547–48 (Tex. Comm'n App.1929, holding approved). A *Stowers* duty is triggered by a settlement demand when: (1) the claim against the insured is within the scope of coverage; (2) the demand is within the policy limits; and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *State Farm Lloyds Ins. Co. v. Maldonado,* 963 S.W.2d 38, 41 (Tex. 1998); *American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 849 (Tex.1994).

■ A *Stowers* claim is not a "bad faith" claim. *Maryland Ins. Co. v. Head Indus. Coatings and Services, Inc.,* 938 S.W.2d 27, 28 (Tex.1996); *Garcia,* 876 S.W.2d at 847; *cf. Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d

165, 167–68 (Tex.1987) (recognizing an insurer's duty, sounding in tort, to deal fairly and in good faith with its insured). However, the *Stowers* claim does sound in tort based on the negligence of the insurer in performing its obligations to its insured under the policy. *See Maryland Ins. Co.,* 938 S.W.2d at 28; *Soriano,* 881 S.W.2d at 314; *see also Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 60 (Tex.1997) (Hecht, J., concurring).

Applying the Restatement factors, the contract and *Stowers* claims are related by the fact that they both originate in the accident which gives rise to the insured's liability and in the obligation created by the insurance policy for the insurer to pay the resulting claim; the only difference being that the *Stowers* claim requires an additional showing that the insurer was negligent in refusing to settle that claim at a time when it could have been settled within policy limits. Thus, liability of the insurer under the insurance policy is subsumed within the *Stowers* action and logically should have been tried along with it as a convenient trial unit.

 Moreover, simply because one claim arises in tort and the other in contract does not preclude the application of res judicata. The Texas Supreme Court has recently indicated that res judicata applies to prevent a party from repackaging a tort claim as a contract claim when both are based on the same underlying conduct. *Ingersoll–Rand Co. v. Valero Energy Corp.,* 997 S.W.2d 203 (1999) (Supplemental Opinion on Motion for Rehearing). In that case, the plaintiff originally filed a lawsuit for products liability, gross negligence, and DTPA violations in connection with construction work by a subcontractor. After losing that action based on an indemnity provision of the construction contract, the plaintiff attempted a second action to recover on a contract theory. *See Id.; Valero Energy Corp. v. M.W. Kellogg Constr. Co.,* 866 S.W.2d 252, 254 (Tex.App.—Corpus Christi 1993, writ denied).

In a related area, when the insured sues his insurer for failure to deal in good faith in the payment of a claim for underinsured motorist coverage, we have held that the settlement of a prior contract action against the insurer for the same claim precludes the subsequent action for bad faith. *Henry,* 895 S.W.2d at 812–13. In addition, most other jurisdictions that use the "transactional approach" have held that the facts underlying a claim for breach of an insurance contract and a bad faith claim against the insurer are sufficiently related for purposes of res judicata. *See Porn v. National Grange Mutual Ins. Co.,* 93 F.3d 31, 35 n. 3 (1st Cir.1996). While one is based on contract and the other sounds in tort, both claims arise out of the same general factual context involving an accident and claim for compensation under the policy. *See Porn,* 93 F.3d at 34–37.

We conclude that Trinity has raised, if not conclusively proven, that the present claim on the policy is precluded by the prior *Stowers* claim. Therefore, the trial court erred in granting summary judgment in favor of the Ochoas. We need not discuss the other potential defenses available to Trinity. We sustain Trinity's third and fourth issues on appeal.

The judgment of the trial court is REVERSED and this case is REMANDED for trial.

### OPINION ON MOTION FOR REHEARING

This Court's opinion of March 2, 2000, held that the trial court erred in granting summary judgment in favor of the Ochoas. We thus reversed and remanded this matter to the trial court. In so doing, however, we concluded that the trial court did not err in denying Trinity's plea in abatement based on dominant jurisdiction. In its motion for rehearing, Trinity has asked that we reconsider our opinion regarding its plea in abatement.

We review the trial court's action in granting or denying a plea in abatement using an abuse of discretion standard. *See Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 248 (Tex.1988).

In order to establish that Williamson County had dominant jurisdiction, Trinity was required to allege and prove: (1) the Williamson County suit was commenced first; (2) it was still pending; (3) the same parties were involved; and (4) the controversies were the same. *Wyatt,* 760 S.W.2d at 248. However, Williamson County would not have dominant jurisdiction if the parties in the Williamson County lawsuit lacked intent to prosecute that action. *Wyatt,* 760 S.W.2d at 248.

In considering this issue, we found that the trial court did not abuse its discretion by denying the plea in abatement based on Trinity's delay in service, showing Trinity's lack of intent to prosecute the lawsuit in Williamson County. Our opinion relied, in part, on the fact that Trinity failed to establish that the Texas Supreme Court had stayed the Williamson County action, thus excusing Trinity's failure to exercise reasonable diligence in prosecuting that suit.

On motion for rehearing, Trinity brings forward a certified copy of the stay order issued by the Supreme Court in the appendix to its motion for rehearing, and has further requested the preparation of a supplemental clerk's record containing the above-referenced order. Trinity also refers this Court to the reporter's record wherein counsel for Trinity referenced the stay order in argument to the trial court. Trinity argues that the stay order precluded Trinity from taking any action to prosecute the Williamson County suit during the pendency of that stay order, and thus Trinity exercised reasonable diligence in prosecuting the Williamson County suit. Therefore, Trinity argues that because no exception to dominant jurisdiction applies in this case, the trial court abused its discretion in denying Trinity's plea in abatement.

Trinity originally filed the Williamson County action on December 10, 1997, naming only Ronnie D. Bleeker as a defendant. By its first amended original petition, filed on December 19, 1997, Trinity added the Ochoa and Villarreal families as defendants. Trinity did not request service on any defendant. The first amended original petition specifically states that no citations were requested at that time. Bleeker was ultimately served on February 4, 1998. The Texas Supreme Court pronounced its stay order on February 14, 1998, and lifted the stay on April 14, 1998. Trinity's motion for rehearing was overruled by the Texas Supreme Court on June 5, 1998. Citation was not requested or service completed on any of the other defendants until June 10, 1998.

Even if we were to assume that Trinity's supplementation of the record is timely and proper, Trinity has failed to establish that it properly commenced suit in Williamson County and that it intended to prosecute that suit. In short, the duration of the stay order is not coexistent with the periods of delay in service. Trinity did not request the issuance of citation from December 19, 1997, when the amended petition was filed, to February 14, 1998, when the stay order was pronounced. In argument, Trinity contended that the plaintiff's addresses were unknown and that it was in the process of investigation, however, the record does not contain any evidence substantiating this argument. Further, Trinity did not request citation from April 14, 1998, when the stay order was pronounced, until June 10, 1998, yet Trinity could have issued citation while its motion for rehearing was pending.

Moreover, the record contains additional evidence supporting the trial court's denial of the plea in abatement. The first amended original petition in the Williamson County action explicitly directs that no issuance of service of citation be made to any defendant. The mere filing of a petition does not fulfill the requirement

of commencement of a suit for the purposes of abatement. *See Russell v. Taylor,* 121 Tex. 450, 49 S.W.2d 733, 737 (1932)(suit will not be commenced where plaintiff does not intend that process be immediately issued and served). Further, the record reflects that Trinity had previously filed a similar declaratory judgment action in Williamson County which was dismissed for want of prosecution in 1995.

Trinity had the burden of proof to establish the allegations in its motion to abate. *Flowers v. Steelcraft Corp.,* 406 S.W.2d 199, 199 (Tex.1966). We conclude that Trinity has failed to establish that the trial court abused its discretion in denying its plea in abatement.

Rickhoff, J., concurred by separate opinion.

Green, J., dissented by separate opinion.